85 So.2d 879 (1956)
STATE of Florida, Appellant,
v.
Julis SIMMONS, Appellee.
Supreme Court of Florida. Special Division B.
February 3, 1956.
Richard W. Ervin, Atty. Gen., John S. Lloyd, Asst. Atty. Gen., John D. Marsh, County Sol. and A.C. Dressler, Asst. County Sol., Miami, for appellant.
Emmett W. Kehoe, Miami, for appellee.
ROBERTS, Justice.
This is an appeal by the State from an adverse judgment in proceedings instituted by it under Section 849.12, Fla. Stat. 1953, F.S.A., for the forfeiture of some $545 seized from the defendant-appellee, Julis Simmons, and allegedly being used in setting up, conducting and operating a lottery. The cause was tried by the trial judge without a jury on the issues made by Simmons' answer, denying that the money was so used or that it was lawfully seized. *880 The trial judge found in his amended final judgment that "both the arrest and the search of the person and property of Julis Simmons was unlawful" and dismissed the complaint for forfeiture. This appeal by the State followed.
In support of the claim for forfeiture, the State's witnesses, who were Deputy Sheriffs of Dade County, testified that they had Simmons under surveillance on information received from an unknown source that he was engaged in bolita activities. On the afternoon in question, they followed him for some time, saw him get out of his car and enter a house, then come back out in a hurry, and re-enter his car. They said that he then started off at a terrific rate of speed and, after going several blocks at the same high rate of speed and weaving in and out of traffic, made a sharp turn to the left without giving a turn signal, causing cars coming from the north to come to a "screeching halt" in order to avoid hitting his car and endangering pedestrians at the intersection. They followed him for another block or two and then stopped him and told him he was under arrest for reckless driving. Further testimony of one of the deputies is as follows:
"Q. Then you say you drove opposite to him and motioned for him to stop? A. That's right. I got out of the car on the left side and went to his side of the car and as I told him he was under arrest for Reckless Driving, I observed on the front seat, some bolita tickets. Then I also looked in the car and observed a paper sack with some bolita pads and envelopes.
"Q. What was the condition of the paper bag that you could see bolita bads and envelopes? A. It was open at the top.
* * * * * *
"Q. What did you do after you saw the slips and the bag? A. I asked Julis Simmons what they were. He stated they were bolita tickets. I asked what he was going to do with them and he said that he was in a hurry to get to 26th Street and 27th Avenue where he was going to meet a white man to turn the slips over to him. I asked him what was the man's name and where was the man going to be. He said he was going to be on the corner. I asked him what kind of car was he going to be driving and he wouldn't answer. I brought him to the Sheriff's office and charged him with Reckless Driving and Possession of Bolita Tickets.
"Q. What did you do with the contents of this bag? A. Prior to bringing him down I searched the Defenant  we will call him the defendant. He was arrested. Person now known to me as Julis Simmons. And in his pocket, I found a payoff sheet, a bolita ticket and $334.89.
* * * * * *
"Q. Now, when you arrested him and found the bag on the front seat and the slips which you say were open to the eye or view, tell the Court then what happened? A. I placed him under arrest for having bolita slips besides the Reckless Driving.
"Q. Then what happened? A. I brought him to the County Jail."
The defendant did not take the stand in his own defense, and rebutted the foregoing testimony only by putting in evidence his affidavit (taken in opposition to a motion for summary judgment filed by the State), denying that he was driving in the reckless manner charged by the State. The State's evidence relating to the possession by him of the bolita tickets and other items must, then, be deemed to have been admitted by him.
The only question here argued by the parties is whether the trial judge erred in refusing to admit into evidence the bolita tickets, money, and other items seized from the defendant's car and his person. The defendant contends here that he was not guilty of reckless driving and that "stopping his car at the point of a gun and charging him with `reckless driving' was merely a subterfuge and pretext to search *881 the appellee's car without a search warrant which is clearly a violation of his constitutional rights against unreasonable search and seizure."
It is true, as contended by defendant, that this court has held that an officer may not stop a person on a pretext of a traffic violation for the sole purpose of searching his person or car for evidence of another crime, and that a search and seizure made in such circumstances is "unreasonable" within the meaning and intent of Section 22 of the Declaration of Rights of the Florida Constitution, F.S.A. Graham v. State, Fla., 60 So.2d 186. It has also been held by this court that "the search [without a warrant] of the trunk of [the driver's] car was not appropriately incident to making effective a lawful arrest for driving while intoxicated," so that evidence found in the trunk could not be used in a subsequent prosecution of the driver for violation of the lottery laws. Courington v. State, Fla. 1954, 74 So.2d 652, 653. But the circumstances of the instant case are different; and the test of whether a search was or was not reasonable must be determined upon "due consideration of the circumstances and manner under which the search is made." Brown v. State, Fla., 46 So.2d 479, 481; Haile v. Gardner, 82 Fla. 355, 91 So. 376.
Here, the defendant was not only arrested for "reckless driving"; he was also arrested for possession of bolita tickets. The search of his person was made as an incident to his possession of the bolita tickets, and not as an incident to his arrest for a violation of our traffic laws. As noted above, the defendant admitted his possession of the bolita tickets, which were lying in full view on the seat of his car, before he was searched by the officers or the material seized; and, we think the officers would have been derelict in their duty if they had failed to arrest him and subsequently to seize the contraband. It then became their duty to search his person and "to seize anything found on his person or in his possession or control tending to show that the person is guilty of a violation of the law." Brown v. State, Fla., 46 So.2d 479, 481. It is not clear from the record whether the defendant was formally charged by the officers with a violation of law arising out of his possession of the bolita tickets, before or after he was searched, but we think the search was valid in either case. He was already under arrest for violation of the traffic laws; and it would appear to be a purely technical matter, not affecting the validity of the search, to require the officers to charge him formally with something he had already admitted, before proceeding with a search of his person for further evidence of his violation of the lottery laws.
We think that, in all the circumstances here, the search of the defendant's person and the seizure of the gambling material found in his car and on his person was "reasonable", within the meaning and intent of Section 22, supra, and that the lower court erred in refusing to admit it into evidence.
Accordingly, the judgment appealed from should be and it is hereby reversed and the cause remanded for further proceedings.
DREW, C.J., and THOMAS and THORNAL, JJ., concur.