ALLEN, Judge.
This is an appeal from a, judgment and sentence entered February 13, 1957, after a jury verdict which convicted the defendant of five violations of lottery laws of Florida. The information charged the defendant in five counts, generally as follows:
1. Set up and promoted a lottery.
2. Aided and assisted in setting up a. lottery.
3. Interested in a lottery.
4. Had lottery tickets in his possession.
5. Aided in sale and procurement of lottery.
The defendant was sentenced to two years’ imprisonment for the conviction on the first, second and third counts of the information.
The appellant states the following as the points of law involved:
Point I. “The search of the defendant’s person and place of business without a search warrant was unreasonable and violated his constitutional rights, and the reception in evidence of the articles obtained by such unlawful search and seizure, over repeated objections of the defendant, and the denial of his motion to suppress, constituted harmful and reversible error.”
Point II. “The proof adduced at the trial of this case was not sufficient to sustain a conviction of the defendant on any of the counts charged in the information.”
The trial judge held that the search and seizure made by the officers was valid since they were made as an incident to a valid arrest.
An officer may, without warrant, arrest a person when he ha,s reasonable ground to believe that a felony has been or is being committed, and a reasonable ground to believe that the person to be arrested has committed, or is committing such felony. See Sec. 901.15, Fla.Stat.1955, F.S.A.
When an arrest is lawfully made, the officers making the arrest are authorized to search the person so arrested, and anything found on such person, or in his possession, which tends to show the violation of any law by such person, shall be admitted in evidence upon a trial for such violation, and such violation shall be deemed to have been committed in the presence of the officer. See Sec. 901.21, Fla.Stat.1955, F.S.A.
The record reveals that Wm. E. Branch, an Orlando peace officer, testified that he had been called to the premises of the defendant to investigate a complaint that an intoxicated person was causing trouble on the premises; that he saw slips of paper on the counter, as well as sheet containing, several columns of numbers; and that he thought the pieces of paper had something to do with a lottery. Subsequently, Branch returned to the defendant’s place of business (which was a dry cleaning business) and observed the defendant had more paper-in front of him with numbers on them. He again left the establishment and contacted two detectives who were more familiar with lottery operations in the city than he was. He again returned to the defendant’s establishment and found numerous papers lying in front of the proprietor. He examined them, asked defendant what they were, and was told they represented numbers pertaining to the dry cleaning business, in that the numbers - on the slips of paper corresponded to numbers on some clothing. Branch then asked the defendant if he could look his place over and search it, which defendant refused to allow. Branch then stepped to the door and motioned for the two detectives to *650 come in from the street, and upon these detectives confirming his belief that the various papers were part of a lottery, he placed the defendant under arrest-for possession of lottery tickets. Branch stated that he knew the papers represented lottery tickets but wanted other officers to confirm his belief and also to be witnesses. The officers then searched the premises.
Jackson, a detective sergeant, testified that some of the items found as a result of the search were lottery slips and dream books; that the items found represented an interest in a lottery; and that he knew of quite a few lotteries operating in Orange County at that time. James Goode, another detective, who was present at the time of the arrest, testified that there were many items that were identified as various forms of lottery paraphernalia; also, that a notebook containing “bolita” or “cuba” was taken from appellant’s pocket after appellant was placed under arrest.
The Florida Supreme Court, in the case of Brown v. State, Fla.1950, 46 So.2d 479, said that a peace officer may arrest without warrant when he has reasonable ground to believe that a felony has been or is being committed, and that as an incident to such arrest, the arresting officer has the power and the duty to search the person so arrested and to seize anything found on his person or in his possession or control tending to show that such person is guilty of violation of the law.
In the case of Rogers v. State, 1947, 158 Fla. 790, 30 So.2d 625, 627, the Court said:
“We must determine the sufficiency of the knowledge of the sheriff and his deputies, not by an analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasonable man, knowing all the facts which the sheriff knew, would have believed under all the circumstances; applying this principle, it would be difficult to escape the conclusion, viewing the entire record as it relates to this investigation, that the defendants were engaged in the promotion of a lottery at the time of their arrest.”
We are of the opinion that under the evidence as adduced at the trial, the arresting officer, Branch, was justified in arresting the defendant without a warrant, and as an incident to such arrest, he was also justified in searching the premises of the defendant for evidence of lottery law violation.
We now advert to the appellant’s second point as to whether there was sufficient proof to sustain the conviction of the defendant. In addition to the testimony, which we have related, above, one of the officers, who testified as an expert witness on bolita operation, stated that certain paper found in the appellant’s possession was a record that was kept of the amount of money paid out on the winning numbers beginning on May 12th; that certain other numbers that appeared on such paper represented the correct number that came out on a particular day; that this paper constituted a writer’s record; that such a record distinguished a banker from a seller; and that another item taken from defendant, identified as a lottery slip, was an item customarily found in the possession of the seller.
Another State witness testified that the slips or tickets represented a lottery commonly known as bolita or cuba. He explained that the dream books found in the defendant’s possession were used in the operation of a lottery to determine the numerical value of dreams. He also testified that the sheets of paper found represented check-up sheets or the seller’s record to determine the amount of money that had been paid on each number and to arrive at the total amount of sales; that the notebook that was taken from the accused’s pocket after he was placed under arrest,. contained bolita and cuba and, in his opinion, the numbers were lottery num *651 bers, that is, interest in a lottery. He also stated that the defendant, on being questioned about the incriminating evidence found in his possession, admitted that the check-up sheets were his, although he denied selling or having any connection with an active lottery at that time. He did say that the handwriting found on the record was his.
The officer repeatedly stated that the sheets indicated that the person in possession of it was a banker, and that the banker was the man behind the operation who was spending the money. The officer concluded that in his opinion the defendant was operating the entire lottery.
We conclude that the jury had sufficient evidence upon which to base its verdict of guilty. There was conflicting evidence as to the issues involved, and it was therefore proper for the jury to determine those issues.
The Florida Supreme Court, in the case of La Barbara v. State, 1942, 150 Fla. 675, 8 So.2d 662, 663, after stating appellant’s contention that the information, while containing but a single count, constituted charges of conducting a lottery for money, of disposing of money by lottery, and of selling shares or rights in a lottery drawing, said:
“It is next contended that the evidence was legally insufficient to sustain the material allegations of the information, and the verdict .and judgment entered in the Criminal Court of Record of Hillsborough County. The record discloses that two students were employed by .the Police Department to purchase Bolita Tickets, and on the 5th of January, 1942, at the corner.of Tampa and Fortune Streets, that each bought numbers ‘across the board’. On the following day they returned to the same place of business and the appellant paid to each of them $20, as each had purchased the paying numbers. It is true that the defendant below on the witness stand denied having seen the State witnesses or that they entered the place of business where he worked and denied that he had had business transactions with the two State witnesses. We think these disputes and conflicts in the testimony were for the jury under appropriate instructions. ‡ 3{?
We have read the cases cited by the appellant as to the sufficiency of the evidence to sustain convictions in lottery cases, but we are of the opinion that the record in the case now before this court shows sufficient evidence to meet the requirements set out in the cited cases.
Judgment of the lower court is affirmed.
KANNER, C. J., and THORNAL, Associate Justice, concur.