180 So.2d 355 (1965)
Louis Harry CHIPPAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 65-157.
District Court of Appeal of Florida. Third District.
November 9, 1965.
Rehearing Denied December 9, 1965.
*356 Prebish & Gautier, Miami, and Aram P. Goshgarian, Miami Beach, for appellant.
Earl Faircloth, Atty. Gen., and Arden M. Siegendorf, Asst. Atty. Gen., for appellee.
Before CARROLL, BARKDULL and SWANN, JJ.
PER CURIAM.
Louis Harry Chippas, defendant below, appeals the judgment and sentence entered following a jury trial in which he was found guilty of breaking and entering a building with intent to commit grand larceny and grand larceny.
Alabama state officials had alerted law officers to be on the lookout for automobile license tags which they suspected were being purchased for use on stolen automobiles. The Sheriff of Butler, Alabama, was informed that a man was in the office of the probate judge obtaining a duplicate tag receipt for one of the questionable licenses, and this man was picked up for questioning. When it was learned that the defendant was sitting outside in the car, he was brought into the Sheriff's office and immediately placed under arrest for "investigation".
The Sheriff testified that although he had no warrant for the defendant's arrest, he had reason to believe that the felony of bringing stolen property into the State of Alabama had been committed.
While the defendant was under arrest for "investigation", the automobile in which he had been found was searched, and a suitcase belonging to the defendant was removed from the car. A gun, certain blank driver's licenses used as evidence in the instant case, and an Alabama license plate allegedly connected with the theft of the automobile were found in the suitcase. As a result of this discovery, the defendant was charged with carrying a concealed weapon.
The defendant was in jail in Alabama for one hundred five days before being bonded, during which time he claims he was never given a hearing, never saw a committing magistrate, and in fact, first learned when he was released on bond that he had been charged with transporting stolen property to that state. Defendant was returned to Florida and tried for breaking and entering with intent to commit grand larceny.
The defendant pled not guilty to both counts. Prior to trial, he moved to suppress *357 all evidence taken by the arresting officers, in that such evidence was seized by an unreasonable search and thus violated his rights of due process of law. These motions were denied and following the trial, the defendant was found guilty as charged.
The defendant contends that the trial court erred in admitting into evidence the items found in his suitcase, on the ground that they resulted from an illegal search and seizure, inasmuch as his arrest and subsequent detention for one hundred five days were improper. He further charges that the trial court erred in refusing his trial counsel the right to cross-examine a witness as to his acquittal on a prior trial for a crime of a similar nature.
Under the first point, defendant says that the arrest for investigation without a warrant was improper. The facts establish, however, that at the time of arrest the Sheriff found the defendant sitting behind the wheel of a stolen automobile.
A similar question was presented by a motion to suppress in Cameron v. State, Fla. App. 1959, 112 So.2d 864. There the defendants were arrested because their unshaven and unkempt appearance aroused the arresting officer's suspicion. It was undisputed that the defendants were violating no traffic regulation or otherwise conducting themselves in any unlawful manner. Notwithstanding the lack of probable cause, the court, after finding that appellant had no possessory interest in the automobile, applied the following rule of law:
* * * * * *
"* * * [I]t is clear from a review of other authorities that the constitutional guarantee to be secure against unreasonable searches and seizures accrues only to the persons in whom is vested the lawful right of possession of the premises searched, and does not extend to others who might incidentally be on the premises at the time the search is made. (Citations omitted)" (Emphasis added)
* * * * * *
The court went on to state:
* * * * * *
"* * * It seems apparent from Cameron's testimony alone that whatever possessory rights he enjoyed when he rented the automobile had been efficiently, effectively and conclusively terminated by his unauthorized sale of the radio and heater, and that this happened prior to the time he was intercepted on the highway. By his own admission, therefore, he had lost the right of custody, even though it be assumed the bailment was originally contemplated to continue indefinitely. His wrongful possession affords no basis for his claim of immunity against the search and seizure. It follows that even if we also assume, per argumenti, that the officer did or did not have probable cause for the arrest, the seized evidence is nevertheless admissible." (Emphasis added)
* * * * * *
Since the defendant did not own or have the lawful right to possession of the stolen automobile he is in no position to object to the search.
Appellant argues that if he has no standing to object to the search of the car, he does have a right to object to the search of his suitcase in which some of the items sought to be suppressed were located. This argument overlooks the fact that this arrest, although characterized as for "investigation", was based on probable cause.
Sheriff Leon Clark, of Butler, Choctaw County, Alabama, testified as follows:
* * * * * *
"Q Did you have a warrant for Chippas' arrest?
"A No, sir.
"Q Did you have reason to believe he had committed a felony?
"A Yes, sir, before I was arresting him.

*358 "Q What felony?
"A Bringing stolen property into the State of Alabama.
"Q What property was that?
"A An automobile  1964 Buick.
"Q What automobile did he bring in, sir?
"A When he come (sic) in he was under the wheel of this 1964 Buick.
"Q When you arrested him, did you know that car was stolen?
"A We were checking it. When that warrant was signed against him we did, yes, sir."
* * * * * *
In a similar situation involving an arrest for "investigation", the court in Bell v. United States, 1958, 102 U.S.App.D.C. 383, 254 F.2d 82, held:
* * * * * *
"At the trial in the case at bar, in an answer to the question, `And for what offense were they being arrested at that time?', the officer testified, `Investigation of housebreaking.' Of course there is no such crime as `Investigation'. But this description given by the officer does not go to the question of probable cause. The question is not what name the officer attached to his action; it is whether, in the situation in which he found himself, he had reasonable ground to believe a felony had been committed and that the men in the car had committed it. The situation was a sudden, unanticipated development. Suppose the officer had arrested these men upon belief that they had committed a housebreaking, but the legal lights in charge of preparing indictments had decided the offense was robbery; or suppose later information had disclosed a murder. Would the arrest have been invalid? Of course not. So to hold would make a mockery of the Supreme Court's admonition to us that probable cause is a matter of practicalities, not of technicalities."
* * * * * *
"The sum total of the reams that have been written on the subject is that a peace officer may arrest without a warrant when he has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes, for belief that a felony has been committed and that the person before him committed it. We require police officers to be reasonable; we too must be reasonable." (Emphasis added)
* * * * * *
In Ralph v. Pepersack, 4 Cir., 1964, 335 F.2d 128, the court stated:
* * * * * *
"* * * To make constitutional questions turn on the term chosen by police officers to describe their activity  officers who are accustomed to the vernacular of the police station and unschooled in the accepted constitutional vocabulary  is to engage in a futile and unwarranted exercise in semantics. Here, it appears that Ralph was arrested because his description and that of his car matched that of the wanted perpetrator of the Montgomery County crimes of which the officers had been informed only a short time before. We have held that there was probable cause for his arrest for those crimes. We think untenable the proposition that an arrest based on probable cause becomes unconstitutional because described by an officer as an arrest for `investigation.' * * *" (Emphasis supplied)
* * * * * *
Under these authorities we conclude that the arrest was based on probable cause and the search thereunder was proper.
The defendant next asserts that even if the arrest were legal in its inception, the validity of the arrest came to an end when he was detained for a period of one hundred five days in Alabama, without *359 being granted a hearing or being presented before a committing magistrate.
The trial court was not furnished with the applicable Alabama statute, or law, in this matter, and there is no reference or showing made in the record as to the necessary procedural steps to be taken after arrest, to prove a violation of the laws of Alabama. In Miller v. Shulman, Fla.App. 1960, 122 So.2d 589, the court stated:
* * * * * *
"* * * The absence from the record of both pleading and proof of foreign law precludes our consideration of this contention raised for the first time in appellant's brief. Kingston v. Quimby, Fla. 1955, 80 So.2d 455. Nor does the uniform judicial notice of foreign law act, § 92.031, Fla. Stat., F.S.A., apply since it does not act automatically. See Aboandandolo v. Vonella, Fla. 1956, 88 So.2d 282."
* * * * * *
During the trial, an accomplice, Stubs, testified, over objection, as to two other robberies in which he and the defendant were alleged to have participated. In cross-examination, defense counsel attempted to present to the jury the fact that the defendant had been acquitted for the robbery of one of the other places mentioned. The State's objection was sustained and Stubs was not permitted to testify as to the acquittal of the appellant.
The ruling of the trial court was correct inasmuch as the record of a former acquittal was the proper method to establish this fact and not by cross-examination of the accomplice. The record of the court showing acquittal of the appellant would have been the best evidence, and the trial court was correct in its ruling.
The judgment is
Affirmed.