195 So.2d 49 (1967)
Frank HANKS, Appellant,
v.
The STATE of Florida, Appellee.
No. 66-76.
District Court of Appeal of Florida. Third District.
February 7, 1967.
*50 Robert L. Koeppel, Public Defender and Phillip A. Hubbart, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and Herbert P. Benn, Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and PEARSON and SWANN, JJ.
HENDRY, Chief Judge.
The defendant was charged by information with the crime of possession of burglarious tools. Following a non-jury trial, the defendant was found guilty. Judgment was entered thereon and defendant was sentenced to seven years in the state penitentiary.
On appeal, the defendant contends that certain exhibits were inadmissible in evidence and that the state failed to establish a prima facie case of possession of burglarious tools.
On February 15, 1965, shortly after 3:00 A.M. officers of the Dade County Sheriff's Office were investigating an unrelated case at N.W. 53rd Street between 21st and 22nd Avenues, Miami. While they were investigating two other cars, a vehicle stopped about two hundred feet from the officers, pulled over to the right beside a big weeded field and its lights were turned off. Two officers went to investigate the vehicle and found the defendant and another crouched below the dashboard. The officers inquired what they were doing there and they answered, "Not doing anything; going to the junk yard." Looking through the rear window of the vehicle, the officers noticed a shell of a safe. When asked where they had obtained the shell, they replied they didn't know; when asked what time the junk yard opened, they didn't know; when asked where the junk yard was, they pointed vaguely in the direction that they were facing. The defendant was then placed under arrest for vagrancy.
The Dade County Sheriff's Office Mobile Crime Unit was called to the scene of the arrest. A search of the vehicle produced: a safe shell; 5 screw drivers; 2 hammers; 2 lug wrenches; 1 pair of pliers; 1 punch; 1 flashlight; 1 toy gun; several pairs of black gloves; and several pairs of brown and green gloves.
Some time between 6:00 P.M. on the 14th of February, 1965 and the next morning, the Hostess Pantry was broken into and its safe was stolen containing in excess of $5,000.00.
When asked if he could identify the safe shell found in the possession of defendant with that taken from Hostess Pantry, the vice president of Hostess Pantry Corp. testified, "Well, the only thing I saw on the safe is I jammed the door on the safe a while back, and I had a mechanic come in and he had to put paper wadding in between the hinge, and there is a paper wadding there. So it is Diebold wadding, and I don't know anything about the numbers, but there were numbers on the safe." The safe had been purchased from the Diebold Safe Company.
The defendant argues that the safe shell and tools taken from his vehicle were inadmissible in evidence as they were the fruit of an unreasonable search and seizure.
A search, without warrant is valid if incident to a lawful arrest.[1]
"[P]ersons wandering or strolling around from place to place without any lawful purpose or object" are deemed vagrants under § 856.02, Fla. Stat., F.S.A.
Phrases similar to "lawful purpose or object" used in vagrancy statutes *51 have been construed to refer to the reason why such person is wandering or strolling from place to place and is not concerned with his mode of making a living.[2] Thus, the offense is complete if, without good or sufficient reason, one wanders or strolls from place to place; although vagrancy statutes in other jurisdictions add that the wandering must be "about the streets at late or unusual hours of the night."[3]
The conduct of the defendant in stopping his car beside a weeded field at 3:00 A.M., 200 feet from police officers, then turning off the lights and crouching below the dash board, together with the evasive answers given the officers upon demand are sufficient to conclude that the defendant was without any lawful object or purpose.
The defendant submits that he was not wandering or strolling from place to place, nor was he on foot at all, but in an automobile.
The mode of travel is not material.[4] Nor do we find merit in the contention that the defendant was not wandering because he had already stopped his vehicle and was parked when questioned by the police.[5]
We hold that the arrest on the charge of vagrancy was lawful and that the evidence seized in connection with the search incident to the arrest is admissible.[6]
The defendant has also questioned the sufficiency of the evidence to support the conviction. He argues that the tools admitted in evidence were ordinary mechanic's tools and that there was no proof that these tools were held with the intent to commit a burglary nor connected to a past break-in and theft.
The record indicates that on the same night that a store was broken into and a safe taken, a safe shell was found in the possession of the defendant. The stolen safe had paper wadding in between the hinge and so did the safe shell in defendant's possession. The defendant testified that earlier in the evening he had lent his vehicle to Jimmie Smith. When he returned it, the safe shell was inside and the defendant was told to drop it off at a junk yard. After his arrest he tried to locate Smith but he couldn't find him because "he wasn't a fellow I normally saw."
The circumstances surrounding defendant's arrest which lead to the reasonable conclusion that he was attempting to avoid detection by the police together with the evidence concerning the defendant's possession of the safe shell and tools  which may be used for lawful purposes but which in the opinion of the detective of the Dade County Sheriff's Office Mobile Crime Unit are burglary tools  is sufficient evidence to support the conviction.[7]
Accordingly, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Brown v. State, Fla. 1950, 46 So.2d 479; Bozeman v. State, Fla.App. 1958, 102 So.2d 648.
[2] Ex parte McLaughlin, 16 Cal. App. 270, 116 P. 684 (1911) quoted with approval in State v. Grenz, 26 Wash.2d 764, 175 P.2d 633 (1946) appeal dismissed 332 U.S. 748, 68 S.Ct. 54, 92 L.Ed. 336.
[3] Id. See also 91 C.J.S. Vagrancy § 2 c.
[4] State v. Grenz, supra, note 2 at 175 P.2d 638.
[5] Gray v. State, 243 Wis. 57, 9 N.W.2d 68 (1943).
[6] Sutherland v. State, Fla.App. 1964, 167 So.2d 236; Rinehart v. State, Fla.App. 1959, 114 So.2d 487.
[7] Diaz v. State, Fla. 1955, 82 So.2d 135; Troise v. State, Fla.App. 1965, 177 So.2d 24.