243 So.2d 615 (1971)
James E. GUSTAFSON, Appellant,
v.
STATE of Florida, Appellee.
No. 69-714.
District Court of Appeal of Florida, Fourth District.
February 8, 1971.
*617 James M. Russ and Michael F. Cycmanick, of Law Offices of James M. Russ, Orlando, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and John Paul Jones, Asst. Atty. Gen., West Palm Beach, for appellee.
CROSS, Chief Judge.
Appellant-defendant, James E. Gustafson, appeals an order of probation withholding adjudication of guilt in a non-jury trial on a charge of unlawful possession of marijuana. We reverse.
At approximately 1:30 a.m. on Sunday morning, January 12, 1969, appellant was driving an automobile in the City of Eau Gallie. A police officer of the city on routine patrol was following and observed appellant's vehicle weave slightly, the left wheels crossing into another traffic lane. The officer stopped the vehicle only "to find out why he had been driving that way, if he had been drinking or something," with no intention of making an arrest for reckless driving.
Upon stopping the vehicle, the officer asked for appellant's driver's license. Appellant informed the officer he was a student and had left his driver's license in the dormitory room at Melbourne. Appellant was then arrested for failure to have a driver's license in his possession, searched, placed in the patrol car and taken to the police station. A companion riding in the vehicle as a passenger was also searched.
During the search the officers took from appellant's coat pocket a cigarette package and proceeded to examine its contents. The examination revealed the existence of several home-made cigarettes. The officer then asked appellant if they were marijuana cigarettes, and the appellant ultimately replied that they were. Upon arrival at the police station, the patrolman delivered the cigarette package and its contents to one of the city's detective lieutenants, who examined the cigarettes and made a preliminary determination that the cigarettes contained marijuana. Appellant was then charged with possession of marijuana. He was subsequently advised of his constitutional rights.
By motions prior to trial and at the non-jury trial appellant by objections challenged the constitutionality of the arrest, the search, seizure, admissibility of the tangible evidence and statements, and the statute upon which the information was based. Needless to say, the motions and objections were denied. The trial court determined appellant was guilty, withheld adjudication of guilt and placed appellant on probation. Hence this appeal.
On appeal appellant raises six points: (1) that the initial stop and detention was unreasonable and thus unlawful under the fourth amendment; (2) that the officer failed to give Miranda warnings upon stopping the automobile, thus rendering all *618 statements and evidence obtained thereafter inadmissible; (3) that the officer had no authority to take appellant into custody for failure to have a driver's license in his possession; (4) that the officer had no authority to conduct a search of appellant's person incident to an arrest for a minor traffic violation; (5) that the evidence was insufficient to establish that the contents of the cigarettes were narcotic; and, (6) that the applicable statute cannot constitutionally proscribe the possession of botanical substances that are not narcotic.
In support of the first contention, appellant asserts that the initial "seizure" of appellant's person was without probable cause, and that any evidence discovered incident to the "illegal arrest" should have been suppressed.
The fourth amendment to the United States Constitution and section 12 of the Florida Declaration of Rights, F.S.A., secure the people against unreasonable searches and seizures and provide certain requirements for the issuance of a warrant. Traditionally, these provisions have been applied to arrests and searches and seizures, with the test of probable cause being applied where no warrant is issued.
In Florida an arrest has been defined as the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime. Essentially, four elements are required in an arrest: (1) a purpose or intention to effect an arrest under a real or pretended authority; (2) an actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him. Melton v. State, Fla. 1954, 75 So.2d 291.
In certain circumstances an arrest is effectuated when the vehicle in which the person to be arrested is riding is stopped, since the officer has effectively interrupted and restricted his liberty of movement. Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. This rule has been applied where the arresting officer had probable cause to believe the driver of the vehicle was carrying moonshine, United States v. Davis, W.D. Pa. 1967, 265 F. Supp. 358, and where an illegal U-turn was made in the officer's presence, United States v. Washington, D.C. 1965, 249 F. Supp. 40.
Clearly, however, there are instances where a vehicle is stopped on a highway by an officer of the law where he does not have probable cause to make an arrest, and in fact, he does not intend to make an arrest unless he acquires additional information to warrant an arrest. Such a detention for the purpose of questioning the occupants pursuant to a routine investigation is not a technical "arrest" which brings into play all the requirements of probable cause. Rios v. United States, 1960, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (routine questioning when a car stopped at an intersection in a neighborhood which had a reputation for narcotics activity); Nicholson v. United States, 5 Cir.1966, 355 F.2d 80; Rodgers v. United States, 8 Cir.1966, 362 F.2d 358 (check for a stolen car); Lipton v. United States, 9 Cir.1965, 348 F.2d 591 (momentary detention to check operator's license); Busby v. United States, 9 Cir.1961, 296 F.2d 328 (routine investigation pursuant to reliable information).
Florida courts have recognized use of detentions which fall short of technical arrests. Chance v. State, Fla.App. 1967, 202 So.2d 825 (investigation of a liquor store robbery); Lowe v. State, Fla.App. 1966, 191 So.2d 303 (investigation of robbery suspects). A license check evidently falls into this category. City of Miami v. Aronovitz, Fla. 1959, 114 So.2d 784.
*619 Although a distinction is made from a formal arrest, stopping a vehicle to interrogate the occupants pursuant to a routine investigation still falls under fourth amendment protections against unreasonable searches and seizures. For this purpose, the act of an officer in stopping an automobile and approaching it while armed and in uniform constitutes a seizure of the person, no matter how brief the detention. Albeit for a short time, the liberty of the occupants of the car is restrained just as much as if the officer had made a formal arrest and then subsequently released the "arrested" individuals. A similar distinction was at issue in Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889:
"It is quite plain that the Fourth Amendment governs `seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime  `arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has `seized' that person."
In the opinion for the majority, Chief Justice Warren warned against drawing distinctions between types of police detentions which would "isolate from constitutional scrutiny the initial stages of the contact between the policeman and the citizen." The fourth amendment was held to come into play as a limitation upon police conduct even if the officers stop short of a technical arrest.
Query: In light of the fourth amendment, may an officer stop and detain the occupants of an automobile for anything less than the probable cause required for arrests and searches?
The constitutional prohibition against unreasonable searches and seizures makes no distinction between informal detention without cause and formal arrest without cause, but there is a difference between the "cause" required. Wilson v. Porter, 9 Cir.1966, 361 F.2d 412. In Terry v. Ohio, supra, the court sought to balance the need to seize the person against the intrusion which it entails. The court held that in justifying the particular intrusion the officer must point to facts which together with rational inferences from them reasonably warrant the intrusion. Simple good faith on the part of the officer is not enough. An objective standard must be used to test the reasonableness of the detention:
"[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate? * * * Anything less could invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction." Terry v. Ohio, supra.
The test has also been stated as follows:
"But due regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers would have had reasonable grounds for their actions. A founded suspicion [supplied] is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing." Wilson v. Porter, supra.
We adhere to the rule that a vehicle may be stopped and its occupants detained if the officers have reasonable grounds for their actions. State v. Padilla, Fla.App. 1970, 235 So.2d 309. But a bare suspicion will not constitute reasonable grounds for the detention. Kersey v. State, Fla. 1952, 58 So.2d 155; Carter v. State, Fla.App. 1967, 199 So.2d 324. The suspicion, if it is to be the grounds for the detention, must be founded upon a reasonable belief that a crime is being or has *620 been committed by the occupants of the vehicle. Other tests may apply if the detention is merely for questioning. See State v. Padilla, supra.
Turning to the case at bar, we ascertain from the record that the only basis for the initial detention of appellant was that the officer suspected that he was intoxicated. This suspicion was based on the fact that the left wheels of the automobile veered into the other traffic lane.
Whether weaving back and forth on the highway constitutes reckless driving has been discussed at length by the Florida Supreme Court. Brown v. State, Fla. 1956, 91 So.2d 175; Collins v. State, Fla. 1953, 65 So.2d 61. In the instant case, however, the officer admitted and the trial court determined that the officer lacked sufficient grounds for arresting appellant for reckless driving.
In the briefs both parties argue whether the officer had a right to stop appellant to check his driver's license, but our reading of the record indicates that the sole reason for stopping the automobile was to determine if appellant was driving while intoxicated. Our determination, then, is whether the officer had reasonable grounds to stop appellant's automobile on that basis.
Drunken drivers are a dangerous menace to highway traffic. Certainly, where a vehicle veers from side to side of the road and crosses the line which delineates its proper lane, where the vehicle is moving at a very slow rate of speed, and where this occurs in the early hours of the morning, we cannot say that an officer does not have reasonable grounds for believing the driver to be intoxicated and thus violating the law in the presence of the officer. There is no unreasonable seizure of the driver's person when he is stopped and momentarily detained while the officer investigates his suspicion. Thus, the appellant was lawfully detained, and the officer was authorized to ask appellant as driver of the vehicle to produce his driver's license.
As to appellant's second contention, Miranda warnings were not necessary before the officer demanded that appellant produce his driver's license. This was not a custodial interrogation; Miranda does not require warnings prior to arrest. Jennings v. United States, 5 Cir.1968, 391 F.2d 512.
Appellant's third contention is that the officer had no authority to take appellant into custody for failure to have a driver's license in possession.
Section 186.51(1) of the Model Traffic Ordinance adopted by the City of Eau Gallie provides that a violator of a traffic ordinance may be kept in custody or released on bail where it appears doubtful that he will appear pursuant to a written citation. In the instant case, there is no reason why the officer should not have taken appellant to the police station for formal charging or to set bail. Appellant was driving an automobile with an out-of-state license plate, and the arresting officer may have had reasonable grounds to believe appellant would not have appeared pursuant to a citation. Although it may not have been the most advisable course to follow, the arrest and taking into custody of appellant was not illegal.
Appellant's fourth contention requires a more detailed inquiry. Having arrested appellant for failure to have a driver's license in his possession, the officer then proceeded to search his person, in the course of which the officer found a cigarette package in appellant's coat pocket containing marijuana cigarettes. Appellant contends the search of his person was unreasonable. The issue for our determination is whether the search was reasonable as incident to the arrest for a traffic violation.
Unreasonable searches and seizures are prohibited by the fourth amendment. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed.2d 653. Normally, the right to privacy yields to the *621 right to search only upon the determination of reasonableness by a judicial officer. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. There are a number of recognized exceptions to the requirement of a warrant, most notably the plain sight exception (Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231), search of a vehicle when an officer has probable cause to believe it is carrying contraband (Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543), and search of the person and immediate surroundings as an incident to an arrest. (Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399).
The authority of an arresting officer to search the person being arrested is embodied in Section 901.21, Florida Statutes, F.S.A.[1] Nevertheless, the Florida Supreme Court has determined incident searches to be unreasonable where a person is arrested for an alleged traffic violation only as a pretext for a warrantless search. Graham v. State, Fla. 1952, 60 So.2d 186. Such searches are considered to be merely exploratory in nature and not truly incident to the arrest, since the search is the primary purpose of the arrest. Riddlehoover v. State, Fla.App. 1967, 198 So.2d 651; Chapman v. State, Fla.App. 1963, 158 So.2d 578.
In the case sub judice we have determined the officer had reasonable grounds for stopping appellant's automobile, and upon its being stopped to ask appellant to produce his driver's license, and upon appellant's failure to do so to arrest appellant for failure to have a driver's license in his possession. The arrest of the appellant in the instant case certainly was not a mere pretext for a search.
We therefore now turn to the issue of the reasonableness of the search incident to a bona fide traffic arrest.
As early as 1921, a method of testing the reasonableness of searches and seizures was set forth by the Florida Supreme Court:
"What is a reasonable or valid search or seizure is to be determined by the courts upon due consideration of the circumstances and manner in which the search or seizure is made by the officer. No search or seizure is permissible under the law without a proper warrant duly issued, except as a reasonable search and seizure may be allowed by law as an incident to a lawful arrest. Where an arrest without a warrant is allowed by law, as for an offense being committed or threatened in the presence of an officer authorized by law to make arrests for such offense, a reasonable search and seizure that is properly incident to a lawful arrest may be made in a reasonable and proper manner by the officer making the lawful arrest; but the search and seizure should not be inappropriate to the reasonable requirements for making effective a lawful arrest." Haile v. *622 Gardner, 1921, 82 Fla. 355, 91 So. 376; State ex rel. Stillman v. Merritt, 1924, 86 Fla. 164, 99 So. 230. (Emphasis added.)
See also 3 Fla.Jur., Arrest § 37. Subsequently, Florida courts in citing the above cases (Haile v. Gardner and Stillman v. Merritt), the italicized portions above emphasized were omitted, and the test for reasonableness became merely a determination of whether the search was incident to a lawful arrest. E.g., Italiano et al. v. State, 1940, 141 Fla. 249, 193 So. 48; Self v. State, Fla. 1957, 98 So.2d 333. The decisions still iterate that the determination of the reasonableness of the search must be made in light of the surrounding circumstances and the manner in which the search was made, Range v. State, Fla. App. 1963, 156 So.2d 534; Herring v. State, Fla.App. 1960, 121 So.2d 807. But cases are legion in applying a categorical test of whether a lawful arrest preceded the search with little or no indication that other relevant circumstances were taken into consideration.
This categorical approach has been used to uphold searches incident to arrests for public drunkenness (Farmer v. State, Fla. App. 1968, 208 So.2d 266), vagrancy (Donar v. State, Fla.App. 1970, 236 So.2d 145; Schuster v. State, Fla.App. 1970, 235 So.2d 30; Hanks v. State, Fla.App. 1967, 195 So.2d 49), and minor traffic violations (Self v. State, supra; Smith v. State, Fla.App. 1963, 155 So.2d 826, cert. dismissed, Fla., 167 So.2d 225).[2]
We will not compound the error nor blindly follow the categorical rule that a search incident to any arrest for the commission of any crime is lawful under the fourth amendment of the United States Constitution and Florida's Declaration of Rights. If the fourth amendment is to be meaningful in protecting the privacy of our citizens, courts must scrutinize searches and seizures allegedly coming within the exceptions to the requirement of a warrant. Amador-Gonzalez v. United States, 5 Cir.1968, 391 F.2d 308. We subscribe to the view expressed in People v. Watkins, 1960, 19 Ill.2d 11, 166 N.E.2d 433:
"The critical issue in each case must be whether the situation that confronted the officer justified the search. That question cannot be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. A uniform rule permitting a search in every case of a valid arrest, even for minor traffic violations, would greatly simplify our task and that of law enforcement officers. But such an approach would preclude consideration of the reasonableness of any particular search, and so would take away the protection that the constitution is designed to provide."
Our determination of the reasonableness of the search in the case sub judice leads to an examination of the basis of the general rule that a search may be conducted as an incident to a lawful arrest. In that regard, one of our federal courts stated:
"If a search for evidence of crime is justified as incident to an arrest, it must be because the evidence relates to the *623 crime for which the arrest is made * * * and not to some other charge the police had hopes of being able to bring against the person arrested." Jack v. United States, 9 Cir.1967, 387 F.2d 471.
A search for fruits of the crime or for evidence has been upheld as properly incident to a lawful arrest in numerous Florida decisions.[3]
Query: May the search be for evidence of any crime, or is it limited to fruits of the crime for which the person was arrested?
Section 901.21, Florida Statutes, F.S.A., seems to indicate that a search is permissible to discover evidence of any crime. However, in State v. Aiken, Fla.App. 1969, 228 So.2d 442, we determined the search to be reasonable as it related to the crime for which the arrest was made. In Brown v. State, Fla. 1950, 46 So.2d 479, the scope of the search was also limited to whether the articles searched for were being utilized in perpetrating a crime for which the arrest was made. To so limit the scope of the search would require the search and seizure to be properly incident to a lawful arrest as thus set forth in the earlier Florida Supreme Court decisions.
This more restrictive interpretation of the proper scope of a search incident to arrest is in harmony with the development of the incidental search at common law. Searches incident to an arrest were allowed at common law if the property was likely to afford material evidence for the prosecution of the offender with respect to the crime for which he was arrested. Note, Searches of the Person Incident to Lawful Arrest, 69 Col.L.Rev. 866 (1969).
The language of the fourth amendment implies that a search will comply with its protective requirements only if the scope of the search is no broader than legitimate governmental objectives justify. If searches are permitted on less evidence than is required for the usual search, the intrusiveness of searches must also be more limited. This approach is the result of the acceptance of the concept of variable probable cause, which means that the probable cause necessary for the search varies with the situation. Note, Scope, Limitations for Searches Incident to Arrest, 78 Yale L.J. 433 (1969).
There must be a nexus between the offense and the object sought for a search conducted in connection with an arrest to be truly incident to it. There are Florida cases which support this conclusion. In Courington v. State, Fla. 1954, 74 So.2d 652, the Florida Supreme Court determined that "the search of the trunk of appellant's car was not appropriately incident to making effective a lawful arrest for driving while intoxicated." The court similarly determined in Slater v. State, Fla. 1956, 90 So.2d 453, that the search of an automobile revealing lottery tickets was not incidental to an arrest for a traffic violation. See also Brown v. State, Fla. 1956, 91 So.2d 175; State v. Simmons, Fla. 1956, 85 So.2d 879; Collins et al. v. State, Fla. 1953, 65 So.2d 61.
Determining the reasonableness of a search by examining the rational nexus with the arrest is much more desirable than examining the motive of the arresting officer. Amador-Gonzalez v. United States, supra. The bad faith test used in sham arrest cases leaves room for abuse where the arrest is clearly proper and no inference of bad faith is justified. Merely because the officer had a bona fide motive in searching the arrested person does not automatically mean that the search was reasonable under the fourth amendment. In arrest situations, we conclude that the *624 only effective means of determining reasonableness is to examine whether the search was properly incident to the arrest, i.e., whether a nexus existed between the arrest and the articles sought.
The true value of this test comes to light when applied to traffic arrest situations. With the exception of driving while intoxicated (where a search for open liquor bottles is reasonable), there are no fruits or instrumentalities of the crimes which comprise traffic law violations. A search incident thereto bears no causal relation to the types of events for which the accused was apprehended. 1 Varon, Searches, Seizures and Immunities 203 (1961). It would follow, therefore, that most searches and seizures following an arrest for a traffic violation are not properly incident thereto and therefore are unreasonable and prohibited by the fourth amendment.
Some authorities have asserted that a search following a traffic arrest is always unlawful and that there are no exceptions. Sobel, Search and Seizure 119 (1964). To state the rule in such unequivocal terms is to again adopt a categorical approach to search and seizure questions. We emphasize that we reject such an approach, since each situation must be judged in light of the circumstances presented, and that hard and fast rules interfere with a proper determination. While most searches following an arrest for a traffic violation will undoubtedly be improper, we do not preclude the possible existence of other circumstances that would make the search and seizure reasonable.
There is still another aspect of traffic arrests which must be considered. It is widely recognized that an arresting officer not only has the right and duty to search the arrested person for fruits and instrumentalities of the offense and for evidence as incident to the arrest, but he also has the right to protect himself and to prevent possible escape by searching for weapons. This is normally included with the other circumstances discussed above as "incident" to a lawful arrest. Green v. State, Fla.App. 1966, 191 So.2d 607; 3 Fla. Jur., Arrest § 37; 4 Wharton's Criminal Law and Procedure § 1538. For the purposes of our discussion here, however, we choose to consider this justification for a search separate and apart from searches incident to an arrest.
It is not the arrest which gives the officer the authority to make a protective search, but rather reasonable cause to believe the suspect is armed. Further, even if there is no reasonable cause to believe the suspect is armed, when he is taken into custody the officer has a right to search for any hidden weapon which could be used against him to effect escape. Nixon v. State, Fla.App. 1965, 178 So.2d 620. Under the concept of incidental search as discussed above, then, a protective search is not actually "incident" to the arrest.
Even with an arrest for a traffic violation, the officer may have reason to conduct a protective search of the person arrested. Some courts have indicated that this is the only justification for a search in these circumstances. State v. Coles, 1969, 20 Ohio Misc. 12, 249 N.E.2d 553; Ciulla v. State, Tex.Civ.App. 1968, 434 S.W.2d 948.
Once the search is initially justified, it must be reasonably limited in scope to the circumstances which justified the search in the first place. Terry v. Ohio, supra. The mere fact of the arrest does not give to the officer an absolute right to search the vehicle or the occupants indiscriminately. Lane v. Commonwealth, Ky. 1964, 386 S.W.2d 743, 10 A.L.R.3d 308. The search must be limited to a search for weapons, which normally entails only "patting down" the suspect.
We turn now to examining the search in the case at bar in light of the law as we have discussed it.
Appellant was initially stopped and detained on suspicion of driving while intoxicated, *625 but he was arrested for failure to have in his possession a valid driver's license. It was for this offense that he was to be taken to the police station to be formally charged.
Under the circumstances presented in this case, there could have been no valid search as an incident to the arrest. There were no instrumentalities of the crime except the car itself, no fruits of the traffic offense and no evidence to be preserved for trial. Any search conducted solely as an incident to the arrest was unreasonable and therefore in violation of the fourth amendment and of the Florida Declaration of Rights.
When the officer determined to arrest appellant and to place him in the squad car to be taken to the police station, he had a right to conduct a custodial search of appellant's person for his own protection and to prevent escape. An officer cannot be expected to place a suspect in the rear seat of his squad car without first searching him for weapons which might be used against him en route to the station house.
The custodial search is limited to weapons and instrumentalities for escape. In the instant case the officer removed a cigarette package from appellant's coat pocket and inspected the contents. Surely he did not expect to find a dangerous weapon inside the small, light cigarette package. We do not require the arresting officer to close his eyes to evidence of other crimes which he may discover in the course of the search, but we do require the officer to limit the scope of his search to one for weapons or instrumentalities of escape. The only reasonable conclusion to be drawn from the officer's conduct is that he was searching for something other than a weapon, and under these circumstances such a general search is unwarranted and unlawful. The arrest was not made as a pretext for the search; nevertheless, to allow the search to go beyond a pat-down for weapons would be to circumvent the rights guaranteed by the fourth amendment of the United States Constitution.
The argument asserted by the state that the search was lawful, since appellant would have been thoroughly searched at the police station, is without merit. The officers at the police station would have had no right to search appellant unless he was to have been incarcerated. The probability that appellant would be issued a citation or notice or released on bail or on his own recognizance is too great to allow the arresting officer to conduct the search at the scene of the arrest. The search is not to be allowed until the circumstances are such that it is reasonable. A search that may become reasonable at a later time may not be made prematurely.
Since the search was unlawful, the evidence seized should have been suppressed.
Due to disposition of the case, it is not necessary to treat the remaining two points raised by appellant.
Accordingly, the order of probation is reversed and the cause remanded with directions to discharge the appellant from further prosecution under Information F 69-33.
Reversed and remanded, with directions.
LEE, THOMAS E., Jr., Associate Judge, concurs.
REED, J., concurs in conclusion.
NOTES
[1] 901.21 F.S.A. Search of person arrested; admission in evidence of property found.
(1) When any sheriff, deputy sheriff, or other police officer in this state shall lawfully arrest any person, the officer making such arrest, or his assistant, may search the person so arrested, and if such search reveals the violation of any law, the officer shall hold such person upon a charge of violating the law, the violation of which has been so revealed, and anything found on such person or in his possession which tends to show the guilt of such person of the violation of law shall be admitted in evidence upon a trial in which such violation is charged, and such violation shall be deemed to be one committed in the presence of the officer.
(2) When any sheriff, deputy sheriff, or other police officer of this state, shall lawfully arrest any person for the violation of the road or speed laws, or for reckless driving, or driving while drunk or intoxicated, and shall find upon making such arrest that such person has unlawfully in his possession or control, concealed weapons, intoxicating liquors or stolen or embezzled property, contrary to law, it shall be deemed to be a violation of the law committed in the presence of the officer so making the arrest * * *
[2] It is important to describe the circumstances under which it was held lawful to search incident to an arrest for a minor traffic violation. In Self v. State, supra, a truck was stopped for driving with a defective taillight, and the beam of the patrolman's flashlight through the panels of the trunk revealed moonshine equipment. The canvas cover was removed voluntarily by the driver. The court held that the search was reasonable and proper under the circumstances as incident to a lawful arrest.

In Smith v. State, supra, the appellant was arrested because it was his fourth traffic violation, and prior to being taken to the police station for formal charging he was searched. This was held to be a reasonable incidental search. Concurring specially, however, Judge White emphasized that the law does not give officers unqualified authority to conduct a search after stopping a driver for a routine license check, but because there was no subterfuge, he concurred in the result.
[3] Fletcher v. State, Fla. 1953, 65 So.2d 845; Gibson v. State, Fla.App. 1965, 180 So.2d 685; Chippas v. State, Fla.App. 1965, 180 So.2d 355; Gray v. State, Fla. App. 1965, 177 So.2d 868; Lyons v. Town of Lake Park, Fla.App. 1963, 153 So.2d 21; Cameron v. State, Fla.App. 1959, 112 So.2d 864; Bozeman v. State, Fla. App. 1958, 102 So.2d 648.