John Wesley **RODGERS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18202.

United States Court of Appeals
Eighth Circuit.

June 30, 1966.

Rehearing Denied July 26, 1966.

Forriss D. Elliott, St. Louis, Mo. (court-appointed), for appellant.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee; Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

John Wesley Rodgers, age 33, was charged by information with having in his possession on or about June 17, 1965, in violation of 26 U.S.C. § 5851, a certain firearm, namely, a shotgun with a barrel less than 18 inches in length, made in violation of § 5821. Rodgers pleaded not

guilty to this charge. He has been represented by the same appointed counsel since prior to his waiver of indictment.

With the approval of the court and the consent of the government Rodgers also signed a written waiver of his right to trial by jury, as provided by Rule 23(a), Fed.R.Crim.P. A defense motion to suppress evidence (the loaded shotgun found in an automobile, and shells and one of the gun's hammers found on the defendant's person) was denied. Rodgers was convicted by the court (Judge Meredith) and received a sentence of three years. He appeals in forma pauperis.

■ Both defense counsel and the defendant pro se have filed briefs. Counsel's primary argument is that (a) the validity of Rodgers' arrest must be determined by federal law; (b) the court erred in not finding that Rodgers was arrested when Missouri state troopers interrupted his automobile journey; (c) the court erred in denying the motion to suppress evidence; and (d) in any event, the search of the automobile was unreasonable.

There is little dispute about the basic facts. The court found them as follows:

"On June 16, 1965, a 1960 white Buick convertible, bearing license number XLO–698, was stolen in St. Louis, Missouri. At some time between 7:00 a. m. and 9:00 a. m., on June 17, 1965, three members of the Missouri Highway Patrol stationed at Rolla, Missouri, received a stolen car broadcast describing a number of cars. The white Buick convertible reported stolen from St. Louis was included in this broadcast. All three of these troopers testified as to what occurred. Later in the day, between 2:30 p. m. and 3:00 p. m., these officers were operating a radar check on Highway 66, west of Rolla, Missouri. Trooper Hoffman was manning the radar car. Sgt. Englehardt was about seven-tenths of a mile west of Trooper Hoffman questioning an out-of-state violator. Trooper Lawyer was about ninety-five feet west of Sgt. Englehardt. When defendant passed Trooper Hoffman, he was violating no traffic regulations, but, noting the passing car as being a 1960 white Buick convertible similar to the car previously reported stolen, Trooper Hoffman radioed Sgt. Englehardt and Trooper Lawyer that the 1960 white Buick convertible would be a good 'check for an item', meaning that the car fit the description of one of the cars on their list of stolen autos. Trooper Lawyer accordingly stopped the car and asked to see the defendant's drivers' license. The defendant replied he did not have it with him; that he had left it in St. Louis. Trooper Lawyer then told the defendant he would have to wait beside the highway for a few minutes while he checked out a few things. Trooper Lawyer then returned to his car and radioed headquarters for a check on defendant's drivers' license and the license number of the car. Trooper Lawyer received information back that the car was stolen. Thereafter, the defendant was placed under arrest and handcuffed.

"Following confirmation of the car being stolen, and after the arrest, Trooper Hoffman entered the white Buick in order to drive it to Troop I Headquarters. Upon entering, he saw the butt of the sawed-off twelve-gauge shotgun protruding from a paper sack shoved partially under the front seat. He did not pull the gun out at that time, but drove on to Troop I Headquarters. At headquarters, Trooper Lawyer conducted a search of the car and seized the shotgun here sought to be suppressed. The shotgun was loaded with two shells and the left hammer was missing.

"At headquarters the defendant was searched and in his pocket were found two twelve-gauge shotgun shells and the left hammer of the gun in question. * * *

"The Court finds that the arrest of the defendant took place at the time defendant was handcuffed, which was after the trooper had received confirmation that the car being operated by the defendant was a stolen automobile. * * * The Court further finds that the defendant was in possession of the shotgun as charged in the information. * * *"

We agree with the government that the appeal pivots on the issue of probable cause to arrest the defendant without a warrant. We also agree with the government and the district court that probable cause was present here.

Although Rodgers, who took the stand and conceded that he had "served time for robbery and burglary and operating a motor vehicle without the owner's consent", denied some details, the record contains abundant supportive evidence for the trial court's findings to the effect that a 1960 white Buick convertible had been reported stolen from Saint Louis; that Highway 66, on which the defendant was traveling, was a main thoroughfare southwest from Saint Louis; that the troopers had been advised of the theft of a white Buick; that one of them observed a car which fit the stolen car's description; that the defendant, who was driving it, was, accordingly, waved to the side of the road; that he was unable, on request, to produce an operator's license; that it was then ascertained by radio that the plates on the car were those of the stolen one; and that the defendant, despite his initial statement that he had left his operator's license in Saint Louis, concededly possessed no such license whatsoever.

We note that Missouri statutes make it unlawful for any person to drive a motor vehicle upon a Missouri highway unless he has a valid operator's license, V.A.M.S. § 302.020(2); that such a license "shall be carried at all times by the holder thereof while driving a motor vehicle and shall be displayed upon demand of any officer of the highway patrol * *. Failure of any * * * operator of a motor vehicle to exhibit his license to any of the aforesaid officers * * * shall be presumptive evidence that such person is not a duly licensed * * * motor vehicle operator", § 302.181, par. 2; that the word "steal" is defined as appropriation "by exercising dominion over property in a manner inconsistent with the rights of the owner", § 560.156, par. 1(2); that intentional stealing is unlawful, § 560.156, par. 2; that steal-ing a motor vehicle is a felony, § 560.-161, par. 2(2); that driving a motor vehicle without permission of the owner is prohibited, § 560.175, par. 1, and is also a felony, § 560.180, par. 1; that any person receiving, with intent to defraud, any property stolen from another, knowing it to have been stolen, shall, upon conviction, be punished as though he had stolen the property, § 560.270; that "[T]he primary purpose of the highway patrol is to enforce the traffic and promote safety upon the highways", § 43.-025; that the patrol has the duty to police the state highways and "to enforce thereon the laws of this state relating to the operation and use of vehicles on the highways", § 43.160; that it is the duty of the operator to stop on signal of any member of the patrol, § 43.170; that "The members of the patrol shall have authority to arrest without writ, rule, order or process any person detected by him in the act of violating any law of this state", § 43.190; and that the state highway patrol shall keep a file and index of motor vehicles reported stolen, § 301.230.

"Probable cause [to arrest] exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The Missouri statutes to which we have referred, coupled with the facts of a stolen automobile, of the correspondence of the defendant's car with the one stolen, of his failure to have an operator's license then in his possession, and of the radio verification that this car bore the license plates of the one stolen, overwhelmingly provide probable cause for the defendant's detention and arrest by the Missouri highway patrol trooper. We have here statutory violations reasonably suspected and the commitment of such violations in the actual presence of the arresting trooper. See Lipton v. United States, 348 F.2d 591, 594 (9 Cir. 1965).

■ The defense asserts basically, however, that the arrest was premature; that it took place the moment the defendant was stopped and his journey interrupted; and that at that moment there was no probable cause to effect an arrest. It is true that, in one sense of the word, Rodgers was then "arrested", that is, slowed and halted in his progress down the highway, but this is not the arrest by police action which brings into play all the requirements of probable cause.

The highway patrol troopers were merely making a check on this white Buick which corresponded with the vehicle reported to them as stolen. They were well within their rights and, indeed, their duty, in so doing. Even a routine license check and its concomitant temporary delay of a driver, where there is nothing arbitrary or harassing present, do not constitute an arrest in the legal sense. D'Argento v. United States, 353 F.2d 327, 334 (9 Cir. 1965); Lipton v. United States, supra, p. 593 of 348 F. 2d. See Rios v. United States, 364 U.S. 253, 262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960). We are not willing, even in this day of critical review of all police operations, to hold that this highway investigation was improper, or not in line with the trooper's duty, or violative of any fundamental right possessed by Rodgers. Lipton v. United States, supra, is strikingly like this case on the facts. Henry v. United States, supra, strenuously urged upon us by the defense, is not helpful; apart from what seems to have been a concession there by the prosecution as to when the arrest took place, its facts are clearly distinguishable. And on an arrest issue, the facts are determinative. Rios v. United States, supra.

The actual arrest here was effected, of course, when, with information received by the officers as to the identity of the automobile's plates, Rodgers was removed from it and handcuffed. The district court so found. Although Rodgers denied certain aspects of the arrest,[1] the record amply supports this finding.

■ The search then made of the defendant's person was incidental to this lawful arrest. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The shotgun's missing hammer and the shells which that search produced were therefore properly admitted in evidence.

■ It follows automatically, too, that this defendant has no standing to complain about the shotgun's seizure and its admission. The gun was contraband. It was partially visible in its paper sack wrapping. It was in plain sight on the floor under the driver's seat. It was readily recognized. And it reposed in a vehicle which was stolen, which was no longer in the defendant's possession, and which, at the time the gun was first seen and taken, had come into the custody of the state troopers as a car which the defendant was not authorized to possess. The search of that automobile at that time could not, under any circumstances, be unreasonable so far as this defendant was concerned. None of Rodgers' constitutional guarantees were violated.

The defendant's pro se brief contains statements that "in company with others he had been abandoned upon the highway with the said motor vehicle" and that he had no knowledge of the shotgun in the car. He appears to argue that (a) he was not indicted and did not waive indictment; (b) the information was unconstitutionally vague; (c) he had no trial or at least he did not know he was

---

1. He testified that the only time he knew the reason for his arrest was when he was taken to court on a day after the one on which he was taken to patrol headquarters; that he did not "remember being told" why he was asked to sit in the troopers' automobile; that he was not told specifically that he was under arrest; that he had not seen or been aware of the gun in the automobile; that when he was searched he had no shells in his pocket; and that he did not remember whether the gun's hammer was there.

on trial; (d) there were violations of the federal criminal rules; (e) the silver platter doctrine eliminated by Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), was utilized here to his detriment; (f) there was a failure of proof as to his knowing possession of the shotgun; (g) his appointed counsel was formerly a prosecutor and rendered incompetent service; and (h) he is being oppressed and discriminated against because of his color and his record.

We have sympathetically read the defendant's personal brief and have carefully reviewed the entire record. We conclude that his assertions are without merit. It is clear to us that the defendant's appointed counsel adequately represented him and forcefully presented all legal arguments of any conceivable substance. The appeal borders on the frivolous but that is not the fault of appointed counsel.

The judgment of conviction is affirmed.