Leroy Herbert RAY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22460.

United States Court of Appeals
Ninth Circuit.

June 27, 1969.

Frank A. Evans, Jr., Los Angeles, Cal., for appellant.

Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

Ray and seven others were indicted for conspiracy (18 U.S.C. § 371) to violate 18 U.S.C. § 1708 by theft of mail and 18 U.S.C. § 2113(a) by entering banks and savings and loan institutions with intent to commit felony. He and two of the others, Hollyfield and Hill, were tried before a jury and found guilty. Ray appeals. We affirm.

There is ample evidence to sustain the conviction. The scheme was to steal mail from street mailboxes, extract from it such items as checks and bank or savings and loan passbooks, and by the use of these items obtain money from the institutions. False identifications, such as California drivers' licenses, bank courtesy cards, credit cards and social security cards, were also used, as were stolen passbooks, account numbers, stolen checks, forged signatures on such checks, forged endorsements, and forged withdrawal slips. The false identifications were prepared by Ray. Young women did the forgeries of checks or withdrawal slips and obtained money. In many instances, the proceeds went to Ray and he paid the young women for their services.

In one rather bizarre instance a Mrs. Banks, living in Hollywood, drew a check on her account in a branch of the Bank of America in Whittier, in payment of real property taxes. It was placed in an envelope addressed to the Tax Collector, and mailed by her husband in a street corner mailbox in Hollywood. It was stolen from the box and turned over to a co-conspirator, Jacqueline Rochelle Dunn. Mrs. Dunn went with two others to the Bank of America in Whittier. She entered the bank alone, practiced forging Mrs. Banks' signature, wrote the number of Mrs. Banks' account and printed Mrs. Banks' name on a slip of paper, and proceeded to a teller's window. There she said she was Mrs. Banks, handed the teller the slip of paper and asked for the amount of the balance in the account. The teller asked Mrs. Dunn to sign her name on the slip. She then forged Mrs. Banks' signature on it. Mrs. Banks, as it happened, was also a teller in the same bank, at an adjoining window, and Mrs. Dunn was caught.

We consider each of Ray's claims of error.

■ 1. *Ray's motion to suppress.* Ray was arrested by a Postal Inspector, who had obtained an arrest warrant. Certain evidence was obtained as a result of the arrest, and Ray moved to suppress it. It is conceded that the warrant was invalid under the decision in Giordenello v. United States, 1955, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503, because the affidavit of probable cause did not state the sources of the information contained therein. However, the inspector in fact had ample probable cause to arrest, and the arrest was therefore valid. 18 U.S.C. § 3061(a) (3). Russo v. United States, 9 Cir., 1968, 391 F.2d 1004, 1006; Rocha v. United States, 9 Cir., 1968, 387 F.2d 1019,

1022; Dearinger v. United States, 9 Cir., 1967, 378 F.2d 346, 347; Bell v. United States, 9 Cir., 1967, 371 F.2d 35; United States v. Hall, 2 Cir., 1965, 348 F.2d 837, 841–842; cf. Ferganchick v. United States, 9 Cir., 1967, 374 F.2d 559. The claim that, having first indicated an intention to grant the motion to suppress, the court could not change its mind when the foregoing authorities were called to its attention is without merit.

■ 2. *Hollyfield's motion to suppress*. Hollyfield also moved to suppress certain evidence found on his person when he was taken to the police station after he was arrested. Ray did not join in that motion, but now assigns its denial as error. We doubt that he is now in a position to raise the question. We doubt too, that he would have standing even if he himself had made the motion or joined in it. The search was not directed at him. See Jones v. United States, 1960, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697; Diaz-Rosendo v. United States, 9 Cir., 1966, 357 F.2d 124, 130–134 (in banc).

■ But in any event, there was ample cause for arrest of Hollyfield on a charge of possession of marijuana, and thus for the subsequent search of his person, which produced the evidence. Cotton v. United States, 9 Cir., 1967, 371 F.2d 385, 392–393, and cases cited.

3. *Instruction regarding Ray's failure to take the stand*. Hollyfield and Hill took the stand; Ray did not. The court mentioned that Ray had not taken the stand and told the jury: "No presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify." He then gave the jury proper instructions or how to evaluate the testimony of the two co-defendants who did testify.

■ Although advised in advance that the court intended to instruct on Ray's decision not to testify, counsel did not then request that such an instruction not be given. After the jury was instructed, he did object on the ground that such an instruction should be given only if requested by the defendant. We assume, but do not decide, that if defense counsel asks, at an appropriate time, that such an instruction not be given, the court should not give it. See United States v. Smith, 4 Cir., 1968, 392 F.2d 302 (dictum). Here, however, while the procedure followed by counsel complies literally with Rule 30, F.R. Crim.P., it gave the court no notice of his desires until after the instruction was given, which was too late. It would have been highly prejudicial for the court to call the jury back and tell them that the instruction was withdrawn, and that they should disregard it. There was no error. Coleman v. United States, 9 Cir., 1966, 367 F.2d 388; Lyons v. United States, 1960, 109 U.S.App.D.C. 103, 284 F.2d 237. Cf. Bruno v. United States, 1939, 308 U.S. 287, 292–293, 60 S.Ct. 198, 84 L.Ed. 257.

■ 4. *Limiting cross-examination*. One of the indicted conspirators was Mrs. Dunn, who was a principal witness against Ray. He claims that his counsel's cross-examination of Mrs. Dunn was unduly restricted. However, we find little restriction. The only questions to which objections were flatly sustained were these: (1) the occupation of her husband, (2) whether she was on bail in other cases involving mail situations, (3) whether she had "some indictment in some other case," and (4) where she slept when she spent a night at Ray's apartment. Other objections sustained were few, and related to the form of the questions. Usually, counsel did not follow up with rephrased questions. On the other hand, the facts that she had been indicted in this case, was out on bail, had talked to government agents, and had agreed to testify were clearly brought out. And when she was asked about conversations with government representatives, her answers, often following long pauses, were vague and evasive. Thus the fact of her possible bias and desire to save her own skin

was brought out. And counsel used it effectively in argument to the jury.

We think questions (2), (3) and perhaps (4) went to the bias of the witness as to which defense counsel should be given wide latitude, even though other offenses of which the witness had not been convicted might have been brought out. But we do not think that the error was sufficiently prejudicial to require reversal in this case. As we said in Singleton v. United States, 9 Cir., 1967, 381 F.2d 1, 4:

> "We therefore hold that there was no prejudicial error in the evidentiary ruling which is challenged, although, at the same time, we reiterate our opinion that wide latitude in the right of cross-examination should always be afforded. Harris v. United States, 371 F.2d 365 (9th Cir. 1967); Carter v. United States, 373 F.2d 911 (9th Cir. 1967)."

5. *Claimed misconduct of the court.* There were a number of occasions during the examination of Mrs. Dunn when the court intervened, sometimes to try to clarify counsel's questions, sometimes by asking its own questions. The witness was not cooperative with either side; there were often pauses before she answered questions; she was suspicious and appeared to have a poor memory; she was either not very bright or feigning to be so. Counsel for both sides had a tendency to ask complex questions and to use polysyllabic words. The court, by some prodding and by the use of short and direct questions, succeeded in getting answers out of her, some of which were helpful to the government and some of which helped appellant. The only comments now objected to were incidental to this process. Counsel did not object to them when made. We see no need to quote the record; we have read the entire examination and cross-examination of Mrs. Dunn, and we conclude that the judge's actions were proper and not prejudicial.

Affirmed.