**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Ricardo Antonio GONZALEZ-PEREZ, Ana Soria Prieto, Antonio Prieto-Morejon, Defendants-Appellants.**

**No. 28320.**

United States Court of Appeals, Fifth Circuit.

June 2, 1970.

Max Kogen, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., J. V. Eskenazi, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge.

A jury convicted the three appellants of conspiracy to import narcotic drugs into the United States and of actually importing narcotic drugs. 21 U.S.C.A. §§ 173, 174. Appellants assert that evidence was obtained during illegal searches and was erroneously admitted against them and that, in any event, the evidence is insufficient to sustain their convictions. Finding the searches legal and the evidence sufficient we affirm.

On the evening of May 6, 1969, Guillermo Augusto Davalos, a naval commander of the Republic of Ecuador, arrived at the Miami International Airport in Miami, Florida, aboard a flight which had originated in Ecuador. A check of his baggage by customs officials disclosed very large quantities of cocaine and heroin concealed in false bottoms of the two suitcases he was carrying. Davalos was arrested and it was ascertained that he intended to stay at the Carillon Hotel on Miami Beach. On being questioned Davalos stated that no one knew he was going to stay at the Caril-

lon and that he knew no one in the United States. However, he begged the officers to allow him to go to the Carillon because he was sure someone would show up there to pick up the "cargo."

The officers contacted the Carillon Hotel and ascertained that because of an overflow there all guests were being referred to the Golden Sands Hotel next door. The officers arranged with the manager and employees at the Carillon that anyone inquiring for Davalos would be referred to the Golden Sands and that they would notify the officers of the inquiry. The Golden Sands employees were also instructed to notify the officers if an inquiry was made for Davalos.

At about 7 a. m. the following morning, May 7, three men, Ricardo Antonio Gonzalez-Perez, Antonio Prieto-Morejon (both of whom are appellants), and Roland Calderon-Diaz, appeared together at the front desk of the Carillon Hotel and inquired for Davalos. They were referred to a Spanish speaking desk clerk who advised them that Davalos could be found at the Golden Sands. When the threesome left the Carillon the desk clerk notified the customs agents by telephone of the inquiry. When the three men went to the Golden Sands to inquire after Davalos, the desk clerk there, pursuant to instructions relayed to him by the desk clerk at the Carillon at the request of the customs agents, informed them that Davalos would arrive at 9:00 a. m. Customs agents arrived at the Carillon at about 8 o'clock and, after obtaining identification of the three men from the desk clerk, maintained a surveillance of Gonzalez-Perez and Calderon-Diaz who were walking around outside in the vicinity of the Golden Sands and of Antonio Prieto-Morejon who was seated in the lobby of the Golden Sands. After watching the men pace about nervously looking at their watches until about 9 o'clock, the agents arrested them.

A frisk for weapons was conducted at the scene of the arrest, after which the three suspects were taken by automobile to the Bureau of Customs office for further processing. Since they apparently spoke no English and the customs agents spoke no Spanish, the three men were again advised that they were under arrest by a Spanish speaking customs agent upon arrival at the Bureau of Customs. At that time the suspects were searched and several pieces of paper were taken from their pockets and wallets. These were later admitted into evidence over objection. Two of the most significant pieces of paper seized at this time were taken from the person of Antonio Prieto-Morejon: one from his shirt pocket bearing the notation in his handwriting "Carillon Hotel, Miami Beach—Guillermo Davalos" (Government's Exhibit No. 13); and the other from his wallet bearing a notation in Davalos' handwriting of his name and the name of the Carillon Hotel (Government's Exhibit No. 14).

At about noon on that same day, May 7, Davalos indicated his desire to cooperate with the customs officials and related the facts to which he later testified at trial. In substance these facts are that sometime in March, 1969, a lady had telephoned him at his home in Guayaquil, Ecuador, and asked if he would take some suitcases to the United States. At first he declined to do this but because of pressing financial problems and after two additional telephone calls from unidentified parties he agreed. On May 2, 1969, he met a woman on a street corner in Guayaquil pursuant to a pre-arranged plan. She gave Davalos $3,000 and two suitcases. She refused to tell him what was in the ostensibly empty but obviously weighted bags and instructed him to take the suitcases to the United States and that somebody would contact him at his intended hotel. He wrote his name and the name of the hotel at which he intended to stay, namely the "Carillon Hotel, Miami Beach," on a piece of paper and gave it to the woman. (This is Exhibit No. 14 referred to above). The woman in turn gave him the name of Elisa Prieto and Elisa Prieto's address and telephone

number in Miami, saying he could contact her in the event no one contacted him.

After relating these events to the customs agents, Davalos cooperated with them in twice calling Elisa Prieto's phone number and in later going to her address to deliver the suitcases. During one of the phone calls the woman on the other end of the line said, "This is not Elisa. This is Ana, the woman of Antonio [1] that you met in Guayaquil." The agents accompanied Davalos to the Prieto house where they arrested Elisa Prieto and Ana Prieto. At the time of the arrest a search was made of Ana Prieto's pocketbook, which was sitting on a coffee table in the same room where the arrest took place, and a piece of paper with the names of the Carillon and Golden Sands hotels and a business card with Davalos' name on it were seized. These were later admitted into evidence.

An indictment was returned against appellants Ana Prieto, Antonio Prieto-Morejon and Ricardo Antonio Gonzalez-Perez, along with Roland Calderon-Diaz (the third man who made inquiry for Davalos at the hotels), Elisa Prieto and Davalos. Davalos pleaded guilty and testified for the government. Elisa Prieto and Calderon-Diaz were acquitted.

Appellants Prieto-Morejon and Gonzalez-Perez assert first that their arrest was illegal because it was made without a warrant and without probable cause to believe that they were committing a felony and that, therefore, the search incident to it contravened the Fourth Amendment. Accordingly, they argue, the evidence seized in this search should not have been admitted against them at trial.

■ Although there are, no doubt, cases in which the existence of probable cause to make a warrantless arrest is much clearer, we agree with the conclusion of the District Court, made after the hearing on the motion to suppress, that there was probable cause for the arrests made outside the Carillon and

Golden Sands hotels. If there is evidence in the particular case which would justify a man of reasonable caution to believe that a felony has been or is being committed there is probable cause to make an arrest. *E. g.*, Wong Sun v. United States, 1963, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441; Johnson v. Middlebrooks, 5 Cir. 1967, 383 F.2d 386. Probable cause is a practical, non-technical concept which depends on a balancing of the interests of law enforcement to do its job effectively and of private citizens to be free from invasions of their privacy by the police, *E. g.*, Beck v. Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142; United States v. Sanchez, 5 Cir. 1969, 412 F.2d 1177; see Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Thus, we must determine whether a reasonably prudent officer in the position of the arresting customs agents would have reasonably believed that a felony had been committed. *Ibid.*

■ Appellants argue that the mere fact that they inquired at the hotels for Davalos does not establish probable cause. In the ordinary case this would probably be true. But the unusual circumstances in this case give strong circumstantial support to probable cause. Experienced customs men would naturally and reasonably conclude that a quantity of narcotics of the size brought in by Davalos was intended for distribution rather than personal use. Davalos was held incommunicado from the minute he arrived in the United States. He specifically told the customs agent that *he knew no one in this country and that no one knew he was going to stay at the Carillon.* Nevertheless, he begged to go to the Carillon because he was sure someone would contact him there to pick up the suitcases. Furthermore, Prieto-Morejon and Gonzalez-Perez, along with Calderon-Diaz, inquired for Davalos at 7:15 in the morning. This is a most unusual visiting hour at Miami Beach ho-

---

1. By "the woman of Antonio" she presumably meant either the wife or girl friend of Antonio.

tels. When told that Davalos would not be back until 9 o'clock they remained in or near the hotel until that time, nervously pacing and looking at their watches. While none of these facts, standing alone, would be sufficient to support a finding of probable cause to arrest the men, when they are taken together and considered with the practical necessities facing customs officials in an investigation after a large find of narcotics has been made, we think they establish probable cause for the arrest.

▇▇▇ Appellants Prieto-Morejon and Gonzalez-Perez next contend that, given the legality of the arrest, the search of their persons which produced some of the documentary evidence used against them was not incident thereto because it was conducted at the Bureau of Customs office, *i. e.*, at a different time and place than their arrest outside the hotels. To support this contention they rely on the language of cases like Stoner v. California, 1964, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; and Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, which say that a search without a warrant can be justified as incident to arrest only if it is substantially contemporaneous with and confined to the immediate vicinity of the arrest. Their reliance is misplaced. None of those cases (or those following them) involved searches of the person arrested. *Stoner* involved a search of a hotel room, *Preston* an automobile, and *Agnello* a house. Here, the arrestees themselves were searched at a time and place different from that of the arrest. A search of an arrestee is still incident to an arrest when it is conducted shortly thereafter at the jail or place of detention rather than at the time and place of arrest. Ray v. United States, 9 Cir. 1969, 412 F.2d 1052; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385, 392; Baskerville v. United States, 10 Cir. 1955, 227 F.2d 454, 456; *see* United States v. Miles, 3 Cir. 1969, 413 F.2d 34, 40–41; Malone v. Crouse, 10 Cir. 1967, 380 F.2d 741; Rodgers v. United States, 8 Cir. 1966, 362 F.2d 358, cert. denied 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454. The arresting officers are not required to stand in a public place examining papers or other evidence on the person of the defendant in order for such evidence to be admissible.[2]

▇▇▇ Appellant Ana Prieto contends that the search of her purse took place an hour after her arrest at a place other than that where she was arrested. However, it is not necessary to determine whether that search fits within the rule applicable to the other two appellants because the record is clear that the search of her pocketbook was made at the time of the arrest in the house and the room where she was arrested.

▇▇▇ Finally, all three appellants complain that the evidence is insufficient to sustain the convictions on either of the counts. We have reviewed the record completely and the evidence is more than ample to meet the circumstantial evidence test of Vick v. United States, 5 Cir. 1954, 216 F.2d 228, and Surrett v. United States, 5 Cir. 1970, 421 F.2d 403, both as to the conspiracy count and the substantive count.

The judgments of conviction are

Affirmed.

---

2. This is not to say that every search of an arrestee or his clothing and effects is valid when made at the place of detention, no matter how long after the arrest the search takes place. *Cf.* Brett v. United States, 5 Cir. 1969, 412 F.2d 401, where the arrestee's clothes, which had been taken when he was originally arrested and replaced with prison garb, were searched three days after the arrest.