**UNITED STATES of America**

v.

**Thomas Peter VALLEJO et al.**
**Appeal of Edson L. WHIPPLE.**
**No. 72-2016.**

United States Court of Appeals,
Third Circuit.

Argued March 22, 1973.

Decided June 20, 1973.

---

Robert E. J. Curran, U. S. Atty., Jeffrey M. Miller, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Leonard Sosnov, Asst. Defender, Jonathan Miller, Vincent J. Ziccardi, Defender Association of Philadelphia, Philadelphia, Pa., for appellants.

Before SEITZ, Chief Judge, and ALDISERT and ADAMS, Circuit Judges.

OPINION OF THE COURT

ADAMS, Circuit Judge.

In this case arising from an abortive attempt to smuggle one tón of marijuana from Mexico by way of Texas to Philadelphia, appellant Whipple was convicted of dealing in and conspiring to import marijuana. 21 U.S.C. § 176(a); 26 U.S.C. § 4755. The district court denied a suppression petition, and Whipple has appealed.

Richard Esch and John Schenck went to Mexico in early 1971 to discuss with David Miller the possibility of flying "illicit" drugs into the United States. After agreeing to work together in upcoming drug ventures, Esch and Schenck returned to the United States while Miller remained in Mexico.

Thereafter, Leonard Glassberg flew to Mexico and met with Miller in January, 1971, to discuss the plans for smuggling the marijuana into the United States. In February, 1971, Whipple came to see Glassberg in his hotel room and indicated that he, Whipple, was "fully capable of procuring an airplane and pilot, and asked if it were possible for him to enter into some sort of contractual agreement with [Glassberg] and David Miller in relationship to smuggling marijuana." Glassberg's girl friend, Maria Kirby, who was present at the meeting, confirmed this story.

Celcer, the pilot of the plane, testified that Whipple hired him with instructions to pick up a load of marijuana in Vera Cruz, Mexico. Celcer received the marijuana, landed in Texas, and, after obtaining further instructions from Whipple, flew the marijuana to Philadelphia. Whipple's conversations with Celcer were intercepted electronically by government agents with the pilot's permission.

Under these circumstances there was probable cause to issue an *arrest* warrant, which was properly executed upon Whipple in a public airport lobby in Harlington, Texas on April 12, 1971.

When taken into custody, Whipple was carrying a large clothes bag and some carry-on luggage that were taken from him by the arresting authorities. He was immediately driven to the United States Customs House in Brownsville, Texas. Upon arrival in Brownsville, approximately one hour after his arrest in Harlington, the authorities examined Whipple's baggage and retained certain documents later used at trial. They had no *search* warrant.

Whipple contends, among other things,[1] that the warrantless search of his luggage at the Brownsville Customs House following his arrest at the airport nearly one hour earlier violated his Fourth Amendment rights.

Having carefully examined all the evidence in this case, this Court is of the opinion that it is unnecessary to determine the legality of the search of appellant's baggage. Even assuming that the search was unlawful, the mass of remaining evidence against Whipple was overwhelming. Glassberg and Miller both changed their pleas to guilty and testified on behalf of the government. Maria Kirby confirmed Glassberg's trial testimony. Celcer, the pilot, also testified against Whipple, and the conversations between Whipple and him, which had been tape recorded with Celcer's permission, were played to the jury. In addition, U. S. Customs Agents testified to having seen Whipple meet with Miller and to having heard Whipple planning the touchdown of the plane in Philadelphia. Under these circumstances, the admission of the "fruit" of the allegedly unlawful search was harmless beyond a reasonable doubt. Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967); Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

As intellectually alluring as it might be to address ourselves to the intriguing question whether the examination of the luggage at the Customs House constitutes a "search" for Fourth Amendment purposes, in view of the conclusion that any error committed by the admission of the fruits of that activity was harmless beyond a reasonable doubt, we eschew, as unnecessary and thus inappropriate, that attractive assignment.

The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge (concurring).

I prefer to address the interesting question posed in this appeal: whether the warrantless search of appellant's luggage at the Customs House in Brownsville, Texas, one hour after his arrest in a public airport in Harlington, Texas, was lawful as incident to an arrest, United States v. Miles, 413 F.2d 34 (3d Cir. 1969), or comes within the prohibition of Preston v. United States, 376 U. S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The district court denied a petition for suppression and appellant was convicted of dealing in and conspiring to import marijuana. 21 U.S.C. § 176(a); 26 U.S.C. § 4755.

The arrest followed an abortive attempt to fly a ton of marijuana from

---

1. Appellant also contends: (1) adverse trial publicity denied him a fair trial; (2) the court erred in admitting evidence of conspiracies other than the one charged in the indictment and in failing to give a cautionary instruction; (3) the court erred in not dismissing the indictment because government agents failed to make an inventory of personal property seized from appellant and failed to return all of appellant's property; (4) the court erred in not warning appellant that if he jumped bail, trial would proceed in his absence; (5) the court erred in failing to charge on entrapment; (6) the court charged improperly on unexplained possession of marijuana; and (7) his rights under Rule 32(a) of the Federal Rules of Criminal Procedure and the Sixth Amendment were violated by the court's refusal to sentence appellant on all counts for which he was convicted. We have concluded that these arguments are without merit.

Mexico via Texas to Philadelphia on March 15, 1971. One Glassberg met appellant Whipple in Mexico in February, 1971, at which time Whipple indicated that he was "fully capable of procuring an airplane and pilot, and asked if it were possible for him to enter into some sort of contractual relationship with (Glassberg) and David Miller in relationship to the smuggling enterprise." A government undercover agent witnessed the meeting. The plane's pilot testified that Whipple had hired him with directions to pick up a load of marijuana in Vera Cruz, Mexico. The pilot did exactly that, stopped in Texas, and, after obtaining further instructions from Whipple, flew the ton of marijuana to Philadelphia. Whipple's conversations with the pilot were intercepted electronically by government agents with the pilot's permission. It is an understatement to observe that under these circumstances there was probable cause to issue an arrest warrant which was properly executed upon Whipple in a public airport lobby in Harlington, Texas, on April 12, 1971.

When taken into custody, Whipple was carrying a large clothes bag and some carry-on luggage. He was taken to a waiting car and immediately driven to the United States Customs House in Brownsville, Texas. Immediately upon arrival there—approximately one hour after his arrest in Harlington—this baggage was examined and certain documents were retained by the authorities. There was no search warrant. The question for our resolution is whether this was a lawful search and seizure incident to arrest.

I begin my analysis with the seemingly inflexible pronouncement of Preston v. United States, *supra*, 376 U.S. at 367, 84 S.Ct. at 883, that a contemporaneous search incident to a lawful arrest must be limited to the situs of the arrest: "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, *supra*, 269 U.S. [20],

lo v. United States, *supra*, 269 U.S. [20], at 31, 46 S.Ct. [4], at 5, 70 L.Ed. 145." *See also* Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). But if there is one unyielding principle which has emerged from the troublesome area of Fourth Amendment case law, it is that isolated excerpts from judicial opinions do not necessarily rise to black letter dogma.

It is necessary, therefore, to consider the factual background giving rise to the quoted proscription when attempting to apply the principle to a new situation. In *Agnello*, relied upon by *Preston*, Agnello was arrested in the home of one Alba. The police attempted to justify as incident to an arrest, the warrantless search of Agnello's house some blocks away. In *Stoner*, decided the same day as *Preston*, the search of a hotel room on one day while attempting to arrest Stoner was held not to be incident to an arrest made two days later at a different place. In *Preston*, an arrest for vagrancy was made in an automobile parked on the street. The car was driven some distance away to the stationhouse, from which it was towed to a garage where the automobile's trunk was searched.

*Preston* itself was not devoid of cautionary language: "This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, *supra*, 267 U.S. [132] at 158, 45 S.Ct. [280] at 287, 69 L.Ed. 543, *and, to an extent depending on the circumstances of the case*, to the place where he is arrested, Agnello v. United States, *supra*, 269 U.S., at 30, 46 S.Ct. [4] at 5, 70 L. Ed. 145. . . ." 376 U.S. at 367, 84 S.Ct. at 883 (Emphasis supplied.)

Indeed, in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the Supreme Court indicated that there was no absolutism to the *Preston* holding, and affirmed a conviction where, without a search warrant, the police took heroin from the glove compartment of petitioner's impounded automobile a week after he had been lawfully arrested for a narcotics viola-

tion. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), sustained the admissibility of items inventoried by the police as a routine procedure where automobiles were received in police custody. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), distinguished searches occurring when police have the right to custody of the automobile, as in *Cooper*, from those in which the automobile was parked near the police station while the driver was being processed for reckless driving.

It appears, therefore, that any application of *Preston* must be guided by the statement that "the circumstances of the case" control. Varying factual circumstances have guided our court as we have approved or disapproved warrantless searches. Thus, in Miles v. United States, *supra*, we held that removal of the seized object from a darkened hotel stairwell to a location three blocks away and its examination there an hour later did not invalidate an otherwise valid seizure. In United States v. Dento, 382 F. 2d 361 (3d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 307, 19 L.Ed.2d 299 (1967), we did not require officers to make an on the spot search of a car stopped on a busy highway, and held that removal to a police station for an examination twenty minutes later did not invalidate the search. However, in United States ex rel. Clark v. Maroney, 339 F.2d 710 (3d Cir. 1965), on facts closely resembling those of *Agnello, supra*, we found no lawful search incident to an arrest when appellant was arrested on a street in Rankin, Pennsylvania, transported to a Clairton, Pennsylvania, police station where he was interrogated for three hours, and, thereafter, while appellant was still in custody, police conducted a search of his dwelling in Rankin.

I perceive still another factor important to this analysis. I believe that it is necessary to distinguish between the *seizure* by the police of hand carried objects at the time and place of arrest which are examined later at another place, and the *search and seizure* at a place some distance from the point of the lawful arrest. Vale v. Louisiana, 399 U.S. 30, 33, 90 S.Ct. 1969, 26 L.Ed. 2d 409 (1970); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A search is an investigative process which seeks to find or discover the presence of some object. When the object is found or discovered and subject to manucaption by the "searcher," then it can be said that a "seizure" has taken place.

When a search and seizure are effectuated pursuant to a warrant, the geographic limits of the investigative search and the description of that to be seized can be spelled out with some specificity. When a warrantless search and seizure are authorized in conjunction with a lawful arrest, the test of reasonableness rather than the language of a warrant defines both the limits of the search and the objects capable of being seized from the person. Without attempting to define the outer limits of that which is permissible, this would seem to include at the very least seizure of those objects capable of manucaption, i. e., seizure by hand from his person or within "grasping distance" as defined by *Chimel*. Hand carried luggage would come within these specifications. *See* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (zipper bag); United States v. Robbins, 424 F.2d 57 (6th Cir. 1970) (suitcases); Malone v. Crouse, 380 F.2d 741 (10th Cir. 1967), cert. denied, 390 U.S. 968, 88 S.Ct. 1082, 19 L.Ed.2d 1174 (1968) (suitcase).

I am persuaded that *both* a search and seizure occurred at the airport. The pieces of luggage which form the subject of our inquiry were not the object of a search. They were in plain view. They were seized immediately, as Whipple's person was searched for weapons, contraband and evidence of crime.

How then do I describe that which occurred at the Customs House in Brownsville? In my view, it was merely a thorough examination in Brownsville of

an object which already had been lawfully seized in Harlington.[1]

Appellant seems to concede that it would have been perfectly lawful for this examination to have taken place on the floor of the public airport in Harlington, but unlawful if performed where it was—in the office of the authorities in Brownsville, immediately after it was transported there by the Customs agents. This is a formalistic argument with no support other than from language lifted out of context from cases with dissimilar fact situations. No rights inured to the appellant in the public airport in Harlington which were not present in the Customs House in Brownsville. There was no prolonged delay between the seizure of the luggage and the subsequent examination of its contents which would suggest that incriminating material was "planted" therein by the authorities. The examination took place as soon as appellant and his luggage were transported from Harlington to the Customs House in Brownsville. To accept the basic premise of appellant would be to thwart society's interest in efficient law enforcement. "While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.

Were this not to be so, every person arrested for a serious crime would be subjected to thorough and possibly humiliating search where and when apprehended. See United States v. Caruso, *supra*, 358 F.2d [184] at 185–186 [(2nd Cir.), cert. denied, 385 U.S. 862 (1966)]. We see no constitutional mandate for such a practice." United States v. DeLeo, 422 F.2d 487, 493 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970).

I detect an increasing tendency of some courts and commentators to attempt a juridical codification of Fourth Amendment law. Proscribed by the Amendment are only unreasonable searches and seizures; and what is unreasonable must of necessity turn on the particular facts at hand. While there is great temptation to fashion symmetry to the law, see ALI Model Code of Pre-Arraignment Procedure (Proposed Official Draft No. 1, 1972), this can be accomplished properly only by the use of neutral principles and not by a mechanical application of case holdings which would mix automobiles with real estate in an attempt to formulate a rigid rule equally applicable to a hand-carried suitcase seized in a public airport. Desirable though it may be to fashion tight jurisprudential formulae, the constitutional polestar is still the test of reasonableness. United States v. Cafero, 473 F.2d 489, 500 (3d Cir. 1973).[2]

---

1. Given the authority to seize, I do not believe additional authority is necessary to make an examination of that which is properly seized. I recognize that my view is not shared by Judge Adams, who proposes a distinction between seizing and searching a suitcase. It is his theory that one may have authority to seize and detain, presumably indefinitely, a suitcase, but no right to examine its contents in the absence of specific additional authority. Concurring in United States v. Valen, 479 F.2d 467, 472 (3d Cir.) Judge Adams said, "I would be inclined to distinguish 'searches' from 'seizures' for the purpose of determining to what extent, if any, the government may properly (1) detain a person's suitcase (seizure), and (2) examine its contents (search), without first obtaining a warrant before either step (1) or step (2)." He would give the government some right of detention, "by allowing the seizure of the property," but argues that "no legitimate interest in effective law enforcement would seem to justify the greater and further intrusion of a warrantless search of the already immobilized . . . suitcase." But Judge Adams candidly concedes: "It appears, however, that the Supreme Court in Chambers v. Maroney, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 has rejected any such proffered distinction between warrantless searches and warrantless seizures."

2. "As we have observed, the constitutional standard for searches and seizures relating to both tangible objects and communications is the reasonableness of the

Certain guidelines have emerged from the cases. The government has a right "always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. 1 Bishop on Criminal Procedure, § 211; Wharton, Crim.Plead. and Practice, 8th ed., § 60; Dillon v. O'Brien and Davis, 16 Cox C. C. 245". Weeks v. United States, 232 U. S. 383, 392, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914). *Chimel* teaches that "[i]n addition [to a search for weapons on the person of the arrestee], it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." 395 U.S. at 763, 89 S.Ct. at 2040. "In the state and lower federal courts, the right of the police to take possession and make inventory of an arrested individual's clothes and other belongings on his person, if he is being jailed, is generally acknowledged." [3]

But one lesson may be learned from the cases: where there is a valid arrest warrant a custodial examination at the stationhouse of the arrestee's person and the belongings he had on hand at the time of his arrest may be considered incidental to the arrest. And a number of cases have upheld these procedures under the "search incidental to arrest" principle.[4] As Judge Duniway stated in Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967), since the police can search an individual's person incident to arrest, and since the pre-jailing search is "standard and necessary police prac-

tice . . . [w]e cannot see that it makes any difference whether this is done on the spot or at the jail where he is booked." In United States v. DeLeo, *supra*, the First Circuit was faced with a challenge to a search at F.B.I. headquarters forty minutes after a bank robber had been searched for a weapon at the situs of a lawful arrest. Judge Coffin explained: "We recognize that the range of Fourth Amendment cases and the pertinent language of the Court, from Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) to Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), have generally dwelled with searches of cars, rooms, offices, and homes, but not of a person shortly after being arrested and conducted to a police station. Nevertheless, the Court was, in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), required to deal with a search of an alien after being arrested and taken to Immigration and Naturalization Service headquarters. . . The difference between the situation in *Chimel* and that in the case before us is this: the arrest of a suspect in a particular place—be it his apartment, office, or house—has no such nexus with that place as, without more (i. e., a valid search warrant), would justify searching the premises; but the fact that a suspect, arrested in a public place, has been subjected only to a hasty search for obvious weapons has a reasonable nexus with the necessity of conducting a more deliberate search for weapons or evidence just as soon as he is in a place where such a search can be performed with thoroughness and with-

governmental action. Only unreasonable searches and seizures are beyond the constitutional pale."

3. ALI Model Code of Pre-Arraignment Procedure, *supra*, at 189.

4. E. g., United States v. Frankenberry, 387 F.2d 337 (2d Cir. 1967); United States v. Evans, 385 F.2d 824 (7th Cir. 1967); Hurst v. United States, 425 F.2d 177 (9th Cir.), cert. denied, 400 U.S. 843, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970); Westover v. United States, 394 F.2d 164 (9th Cir. 1968); Charles v. United

States, 278 F.2d 386 (9th Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 46, 5 L. Ed.2d 59 (1960); Farris v. State, Ind., 266 N.E.2d 212 (1971); People v. Hambrick, 98 Ill.App.2d 481, 240 N.E.2d 696 (1968); People v. Rogers, 241 Cal.App. 2d 384, 50 Cal.Rptr. 559 (1960). In State v. Stevens, 26 Wis.2d 451, 133 N. W.2d 502, 507 (1965), the court described the inventory search as a fringe benefit of search incident to an arrest. *See also* Commonwealth v. Querubin, 211 Pa.Super. 360, 236 A.2d 538 (1967) and cases cited therein.

out public embarrassment to him. *See* 395 U.S. at 762–763, 89 S.Ct. 2034." 422 F.2d at 492–493. The Fifth Circuit has rejected a similar contention in United States v. Gonzalez-Perez, 426 F. 2d 1283, 1287 (5th Cir. 1970).[5]

I am therefore persuaded that the instant case is of the same mold, for here the object examined at the Customs House was actually seized at the situs of the arrest. The examination of the luggage at the Customs House was not offensive to appellant's Fourth Amendment right.

Finally, if the examination of the carry-on luggage at the Customs House was permissible, it was not improper for the searching officers to inspect papers or other documents found in the luggage. United States v. Gonzalez-Perez, *supra*; United States v. Frankenberry, *supra*; Cotton v. United States, *supra*. I would reject appellant's contention that the search of the luggage was limited to uncovering contraband marijuana or weapons. A concomitant purpose of the search was to prevent permanent destruction of evidence, and the officers could not determine this without examining the items.[6]

Accordingly, I would hold that since the search and seizure in Harlington

was lawful as incidental to an arrest, its validity was not diluted by the subsequent examination of the contents of the luggage in Brownsville. I also agree with the majority that even if the "search and seizure" was illegal, it was harmless error; and that all other contentions of appellant are devoid of merit.

---

5. "Their reliance is misplaced. None of those cases (or those following them) involved searches of the person arrested. *Stoner* involved a search of a hotel room, *Preston* an automobile, and *Agnello* a house. Here, the arrestees themselves were searched at a time and place different from that of the arrest. A search of an arrestee is still incident to an arrest when it is conducted shortly thereafter at the jail or place of detention rather than at the time and place of arrest. Ray v. United States, 9 Cir. 1969, 412 F.2d 1052; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385, 392; Baskerville v. United States, 10 Cir. 1955, 227 F.2d 454, 456; *see* United States v. Miles, 3 Cir. 1969, 413 F.2d 34, 40–41; Malone v. Crouse, 10 Cir. 1967, 380 F.2d 741; Rodgers v. United States, 8 Cir. 1966, 362 F.2d 358, cert. denied 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454. The arresting officers are not required to stand in a public place examining papers or other

evidence on the person of the defendant in order for such evidence to be admissible."

6. The Model Code of Pre-Arraignment Procedure, *supra*, provides a specific section on "Execution and Return of Warrants for Documents," Section SS 220.5; and, subject to certain exceptions, not applicable here, includes documents as permissible objects of Search and Seizure. Section SS 210.3. United States v. Bennett, 409 F.2d 888, 896–897 (2d Cir.), cert. denied sub nom., Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969), rejected any limitation on the type of documents subject to seizure partly on the theory that such considerations are relevant to the Fifth rather than the Fourth Amendment, and partly on a doubt that limitations serve the cause of privacy inasmuch as ordinarily documents must be read in order to determine whether they are evidence of a criminal offense.