**Earlie WRIGHT, Jr., Petitioner,**

**v.**

**M. C. EDWARDS, Sheriff of Lowndes County, Mississippi, Respondent.**

**No. EC 71–72–K.**

United States District Court,
N. D. Mississippi, E. D.

June 5, 1972.

---

Billy Jordan, Columbus, Miss., Jonathan Shapiro, New York City, for petitioner.

Timmie Hancock, Asst. Atty. Gen., Jackson, Miss., Harvey Buck, Dist. Atty., West Point, Miss., for respondent.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Earlie Wright, Jr. petitions the court for habeas corpus relief from state court conviction under the provisions of 28 U.S.C. § 2241. On July 4, 1969, petitioner, after trial by jury, was convicted in the Circuit Court of Lowndes County, Mississippi, of the unlawful possession of marihuana in violation of § 6846, Miss. Code Ann. On the same day he was sentenced to serve a term of two years in the Mississippi State Penitentiary and to pay a fine of $1,000.[1] A motion for a new trial was overruled, and petitioner appealed his conviction to the Supreme Court of Mississippi, which affirmed. Wright v. State, 236 So.2d 408 (Miss. 1970). A petition for re-hearing was denied on July 2, 1970. Petitioner then attempted to take a direct appeal to the Supreme Court of the United States, which dismissed the appeal for want of jurisdiction and, treating the attempted appeal as a petition for writ of certiorari, denied certiorari. Wright v. Mississippi,

---

1. Under the provisions of § 6866, Miss.Code Ann. then in effect, the penalty for the offense was fixed as follows:

"  . . . any person who violates any provision of this act shall, upon conviction, be fined not more than two thousand dollars ($2,000.00) and be imprisoned not less than two (2) years or more than five (5) years. . . . "

Subsequently, the Mississippi Legislature enacted Chap. 521 of the Laws of 1971, known as the "Uniform Controlled Substances Act", which repealed, among others, §§ 6845, 6846 and 6866, Miss.Code Ann. The new act is codified as §§ 6831–51 to 6831–88, Miss.Code Ann. Under the provisions of § 6831–70(a) (2) the penalty for the *felony* of possession of marihuana is fixed at imprisonment for not more than four years, or a fine of not more than $2,000, or both. However, under § 6831–70(c), one who "knowingly and intentionally" possesses marihuana

is declared to be guilty of a *misdemeanor*, for which the penalty is fixed at confinement for not more than six months or a fine of not more than $500, or both. The Supreme Court of Mississippi, in a decision announced March 27, 1972, has resolved the obvious conflict in the statute by holding that the lesser penalty shall be applied, and persons convicted of possession of a controlled substance shall be sentenced as for a misdemeanor. Johnson v. State, Miss., 260 So.2d 436 (decided March 27, 1972).

§ 6831–74(f) provides:

"(f) Any person who was convicted and/or who is still serving a sentence in the Mississippi State Penitentiary for a first offense under any act hereunder repealed may, upon the enactment of this act, petition the court of original jurisdiction for resentencing under the provisions of this act." See also Smith v. State, 248 So.2d 436 (Miss.1971).

401 U.S. 929, 91 S.Ct. 944, 28 L.Ed.2d 210 (1971).[2] Petitioner thereafter filed in the Supreme Court of Mississippi a petition for writ of error coram nobis, which was dismissed. Wright v. State of Mississippi, Misc. No. 110, Miss.S.Ct. (1971). He was then granted leave to file in forma pauperis a petition for writ of habeas corpus in this court.[3]

Petitioner attacks his conviction on two grounds, both of which were raised at all appropriate stages of the proceedings in the trial court and before the Supreme Court of Mississippi. He has thus exhausted his state court remedies within the meaning of 28 U.S.C. § 2254. Petitioner's grounds for habeas corpus relief are:

1. That petitioner's possession of marihuana was discovered by means of the warrantless and unreasonable search and seizure of his personal effects by officers of the Columbus, Mississippi Police Department following his arrest for public drunkenness and creating a disturbance and while his effects were in the possession of the officers solely for safekeeping pending his release from confinement, and that the admission of the fruits of such search and seizure at his trial violated his Fourth Amendment rights; and

2. That § 6846, Miss.Code Ann., and the instructions to the jury given by the trial court totally eliminate criminal intent as an element of the crime of possession of marihuana, resulting in petitioner's being deprived of his liberty without due process of law in violation of his rights under the Fourteenth Amendment to the Constitution.

In reply, respondent says:

1. That the search and seizure complained of by petitioner were not unreasonable for the reason that they were carried out incident to the lawful arrest of petitioner or, in the alternative, that the duty of the officers to make an inventory of petitioner's personal effects in order to safeguard them pending his release from confinement justified the search and subsequent seizure; and

2. That criminal intent is not a constitutionally required element of the crime of possession of marihuana.

Except in one particular, the parties raise no substantial issues of fact, and the court has before it a complete transcript of all of the prior proceedings. Because of the incompleteness of the state record, the court conducted a limited evidentiary hearing, as hereinafter noted, and also received both oral argument and memorandum briefs. The case is now ripe for decision.

### THE FACTS

On August 31, 1968, petitioner, a native of Pickensville, Alabama, but then a resident of Brooklyn, New York, was visiting in Columbus. He had arrived in Columbus from New York at approximately 9:30 that morning after driving all night. His activities during the day are not known, but during the evening hours of August 31, he arrived by automobile at the Elks Club in Columbus, where a dance was being held, in the company of several other persons, including his brother-in-law, a female cousin, a man named "Jimmy", and a girlfriend of the cousin with whom the cousin

---

2. Mr. Justice Douglas was of the opinion that probable jurisdiction should have been noted.

3. Petitioner was admitted to bail on September 1, 1968, at which time he filed a $1,000 appearance bond. Following his conviction and sentencing on July 4, 1969, his appeal bond was set at $2,500, which was met by posting the sum of $2,500 cash with respondent that same day. Petitioner remained at liberty on his appeal bond through the time of filing of the petition for writ of habeas corpus in this

court. On application of petitioner, not resisted by respondent, petitioner was continued on bail pending final disposition of these proceedings, with the $2,500 cash deposited with respondent standing as security therefor. Thus, petitioner has never been imprisoned as a result of the charges against him except for the period commencing with his arrest on the night of August 31, 1968, and ending with his posting of the appearance bond on September 1, 1968 and he has never been in the custody of the Superintendent of Mississippi State Penitentiary.

taught school. Prior to arriving at the Elks Club, petitioner had consumed the proverbial "few drinks".

Petitioner testified that after they got out of their car, he and his friends stood around in front of the Elks Club for a while before going in, and during that time he was handed a packet by Jimmy, who asked petitioner to hold the packet until he returned from inside the club. Petitioner took the brown packet or package and placed it in the right rear pocket of his trousers, where he also carried a handkerchief. He denied that he knew the contents of the package, denied that he ever looked inside it, and insisted that he was merely holding the package for Jimmy as he had been asked to do. Petitioner's testimony was wholly uncontradicted. Neither Jimmy nor any of the other members of petitioner's party testified at his trial.

Officers Thompson and Chandler of the Columbus Police Department were on the night of August 31 on duty at the Elks Club, where a large crowd has assembled for the dance. They observed petitioner and his party as they left their automobile and approached the Elks Club. The officers noted that petitioner was unsteady on his feet and was conducting himself in a boisterous, loud and disorderly manner, including the frequent use of profanity. Chandler asked petitioner to conduct himself in a more orderly manner, and petitioner complied with that request for a brief time. However, petitioner soon became disorderly again near the entrance to the Elks Club where the crowd was attempting to enter the dance, and the officers again observed that petitioner was very unsteady on his feet. Chandler detected an odor of alcohol on petitioner's breath.

The officers requested that petitioner show them some identification, with which request petitioner was slow in complying, whereupon the officers placed him under arrest on charges of public drunkenness [4] and creating a disturbance.[5] After petitioner was placed under arrest, Officer Chandler patted him down, and discovered and removed a .22 caliber pistol.[6] Nevertheless it does not appear from the record that petitioner was ever charged with the offense of carrying a concealed weapon.[7] Petitioner submitted to the arrest without resistance, he made no attempt to escape or to interfere with the officers as they hand-

4. § 2291, Miss.Code Ann. provides:
"If any person shall profanely swear or curse, or use vulgar and indecent language, or be drunk in any public place, in the presence of two or more persons, he shall, on conviction thereof, be fined not more than one hundred dollars."

5. § 2090.5, Miss.Code Ann. provides:
"Any person who shall enter any public place of business of any kind whatsoever, or upon the premises of such public place of business, or any other public place whatsoever, in the State of Mississippi, and while therein or thereon shall create a disturbance, or a breach of the peace, in any way whatsoever, including, but not restricted to, loud and offensive talk, the making of threats or attempting to intimidate, or any other conduct which causes a disturbance or breach of the peace or threatened breach of the peace, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than five hundred dollars ($500.00) or imprisoned in jail not more than six (6) months, or both such fine and imprisonment."

6. The evidence is not clear as to just where on petitioner's person this weapon had been concealed. Thompson testified that it was found in the waistband of petitioner's trousers, while Chandler, who actually discovered the weapon, testified that he found the pistol in the right rear pocket of petitioner's trousers. Petitioner denied that the pistol was removed from his right rear pocket and indicated by gestures, the nature of which are not apparent from the record, the area of his person from which the pistol was taken.

7. § 2079, Miss.Code Ann. provides, in part:
"Any person who carries concealed, in whole or in part, any . . . pistol . . . , shall be guilty of a misdemeanor, and on conviction shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment in the county jail not more than three months, or both, in the discretion of the court."

cuffed him and summoned a patrol car by radio. The officers made no effort to search petitioner thoroughly at the scene of the arrest, and nothing other than the pistol was removed from his person. Petitioner remained in their custody not more than 15 minutes.

Officers Jaynes and Ross, in response to radio message, arrived in a patrol car at the Elks Club to transport petitioner to the police station, which was about a mile away. The arresting officers did not accompany petitioner. Upon arrival at the police station, petitioner was booked, and then Officer Jaynes immediately carried out what he described as the department's usual procedure of "shaking down" a prisoner. The shaking down process consisted of a thorough search of petitioner's person by way of first patting him down and then removing the contents of each of his pockets. At the original trial Officer Jaynes testified that the purpose of the shaking down process was to safeguard petitioner's property until his release from jail;[8] the officer later affirmed that he was also interested in looking for weapons in the shakedown. In the course of the shakedown Officer Jaynes felt a bulge in petitioner's right rear trouser pocket and he removed the small brown package lodged behind a pocket handkerchief. Jaynes opened the package, looked inside, and saw twelve small handrolled white cigarettes, about two inches in length. The officer removed at the same time $116 cash, keys, billfold, and other pocket contents which he placed in a bag and later locked in a file. The cigarettes, however, attracted the officer's interest because of their small size and since they were carried in petitioner's rear pocket beneath a handkerchief. Jaynes at once suspected that they might be something other than regular tobacco cigarettes. The officer then lit a match to one of them and observed that "it did not smell like regular cigarettes."[9] Jaynes alone conducted his experiment with the cigarette after he had placed petitioner in a cell and locked up his other personal belongings. His suspicions confirmed, Jaynes then placed the cigarettes and brown package in an evidence locker at the police station.

Police Officer Thomas was present at the police station when Jaynes conducted the shakedown of petitioner. He observed the search and affirmed that when Jaynes removed the brown package from petitioner's right rear pocket, Jaynes called Thomas over and asked him to look at it. Jaynes then asked Thomas if he

---

8. Officer Jaynes testified on cross-examination as follows:

"Q After you removed his personal effects in the course of your routine police examination for what purpose did you remove those effects?

A What purpose? Where it won't be carried up to the cell with them, knives, keys, watches and all that and they are put in regular envelopes and marked with his cash, personal belongings for him when he gets out of jail.

Q They are marked personal belongings?

A Yes, sir.

Q In other words, you all do this for safekeeping, keep his belongings safe?

A Yes, sir."

9. On cross-examination by defense counsel, Officer Jaynes gave the following explanation of his belief that he had probable cause to open the small brown package and examine the contents:

"Q What probable cause did you have that they were not regular cigarettes?

A Being in a small brown envelope package, being in his right rear pocket underneath a handkerchief."

Upon being asked to compare the characteristics of the cigarettes contained in the small brown package with several other cigarettes shown to him by defense counsel, Officer Jaynes testified:

"Q What distinctive characteristic did you notice that those cigarettes, that cigarette and this cigarette and this cigarette and this cigarette?

A They are some of the same characteristics except that they did not come out of the defendant's pocket that was placed under arrest.

\* \* \* \* \*

Q Had these cigarettes come out of the defendant's pocket, would you have smoked one of them?

A I didn't smoke any of them. I burnt one. I would have it it came out of a brown package out of defendant's pocket that had been placed under arrest on another charge."

knew what it was, to which Thomas replied that he did not. Jaynes then asked Thomas, "Well, how about labeling it for Chief Walters for me and I will come back up and get it." Thomas testified that he complied with this request by placing the brown package in a larger envelope, which he labeled and delivered to Jaynes. Although Thomas was in the immediate presence of Jaynes and petitioner during the shakedown, and although he was asked to state in chronological order everything he saw Jaynes do with the brown package, he did not testify that he ever saw Jaynes light or burn a cigarette removed from the package. Indeed, it does not appear that Thomas was aware that the brown package contained cigarettes.

At approximately 8 a. m. the next day, September 1, Officer Chandler reported for duty and, having been advised during the preceding night that an article taken from the person of petitioner was in the evidence locker and was to be delivered to Chief of Detectives Walters, he removed the brown package from the evidence locker and delivered it to Chief Walters, who kept it locked in his desk until September 4.

Petitioner was not questioned concerning marihuana and was not informed that he was being charged with possession of marihuana until the morning of September 1, when he was fingerprinted. At that time he was questioned by a detective lieutenant concerning the con-

tents of the brown package, but denied any knowledge of the contents. Later that day he was released on bail to answer the charge of possession of marihuana.[10]

On September 4, the police chief delivered the brown package to Detective Sergeant Glover with instructions to transport the package to the Mississippi Crime Laboratory at Jackson for chemical analysis. This was done on September 5. Laboratory tests revealed that the cigarettes in the brown package contained marihuana. At no time did the police officers either seek or obtain a warrant for the search or seizure of any of petitioner's personal effects.

On November 19, petitioner was indicted by the grand jury of Lowndes County for the unlawful possession of marihuana. He was tried in the Circuit Court on July 4, 1969. At his trial, petitioner was represented by retained counsel, who has continued to represent him through every stage of the proceedings and is of counsel before this court. Petitioner's attorney strenuously but to no avail objected to the introduction of evidence resulting from the examination of the contents of the brown package. In his motion for a new trial, defendant's attorney also raised the question of the constitutional validity of the statute and the propriety of jury instructions omitting the element of criminal intent.[11] The trial court denied the motion. Petitioner having been convicted, his motion for new trial denied, his contentions re-

---

10. See notes 1 and 3, supra.

11. The trial court gave the following jury instruction at the request of the state:
"The court instructs the jury for the state that it is unlawful to possess marihuana, and if you believe from the evidence in this case beyond every reasonable doubt that the defendant, Earlie Wright, Jr., did, on the time and occasion complained of have in his possession marihuana then it is your sworn duty to find the defendant guilty as charged."
However, at the request of the defendant the court also gave the following instruction:
"The court instructs the jury for the defendant that each and every individual juror must be convinced by the state's

evidence that the defendant did in fact *wilfully*, unlawfully and feloniously possess marihuana contrary to the laws of the State of Mississippi, and that if any one or more jurors, though they may be in the minority on the vote of the panel, possess any reasonable doubt, defendant did in fact *wilfully*, unlawfully and feloniously possess said vegetable in violation of the State of Mississippi, then those jurors, or that juror, is to continue to vote not guilty without regard for conserving the time of the panel, his fellow jurors, or himself until after consulting with his fellow jurors that reasonable doubt is removed, or as long as he or they possess a reasonable doubt as to the guilt of defendant."

jected by the Supreme Court of Mississippi, and the Supreme Court of the United States having declined direct review of his conviction either by way of appeal or certiorari, he now invokes his right to collaterally attack his conviction in this court by way of the great writ of habeas corpus.

## THE LAW

Although the State Supreme Court has rejected petitioner's claims, the federal habeas court has the power and the duty to make an "independent adjudication" of the federal constitutional issues raised by petitioner, e. g., Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The state adjudication carries the weight which the federal practice gives to decisions of the court of last resort of another jurisdiction, but the issues raised being federal, it is the federal court which must have the last say. Fay v. Noia, supra. We thus proceed to examine the petitioner's contentions which raise issues of fundamental constitutional rights under the Fourth and Fourteenth Amendments to the federal Constitution.

### A. *The Search and Seizure*

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Constitution of the United States, Amendment IV.

While the Fourth Amendment does not in express terms prohibit all warrantless searches and seizures, referring instead to "unreasonable" searches and seizures, it is now settled constitutional doctrine that a search and/or seizure conducted without a warrant is per se unreasonable, subject only to certain well recognized exceptions grounded upon the exigencies out of which such exceptions arise. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct.

2022, 29 L.Ed.2d 564 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); United States v. Resnick, 455 F.2d 1127 (5 Cir. 1972); Barnett v. United States, 384 F.2d 848 (5 Cir. 1967). Thus the burden is on the party seeking to justify the warrantless search to produce facts bringing the search or seizure within one of the exceptions. Barnett v. United States, supra; Brett v. United States, 412 F.2d 401 (5 Cir. 1969); United States v. Resnick, supra. The exceptions are "jealously and carefully drawn", and there must be "a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative." *Coolidge*, supra, 403 U.S. at 455, 91 S.Ct. at 2032, 29 L. Ed.2d at 576.

A well-recognized exception to the requirement of a search warrant is the right to search the person of an arrestee incident to his lawful arrest. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); United States v. Gonzalez-Perez, 426 F.2d 1283 (5 Cir. 1970). A search of the person of an arrestee is incident to the arrest "when it is conducted shortly thereafter at the jail or place of detention rather than at the time and place of arrest." United States v. Gonzalez-Perez, at 1287. However, while a search of a person incident to an arrest may be undertaken or completed at a different time or place, a warrantless search and seizure is not lawful if conducted after long delay and not contemporaneous with the arrest. Brett v. United States, 412 F.2d 401 (5 Cir. 1969). A further rule is that warrantless seaches and seizures incident to an arrest are strictly limited in purpose and scope. As to purpose, an arresting officer may reasonably search for and seize: (1) weapons that the arrestee may use to resist arrest or effect escape; (2) evidence of crime which may be concealed or destroyed; and (3) property the possession of which is unlawful (contraband). Chimel v. Calif., 395 U.S.

752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ;[12] United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). As to scope, an arresting officer may reasonably search for and seize objects on the arrestee's person, and "the area 'within his immediate control' ". *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040.

■■ Petitioner and respondent are not in disagreement with the foregoing general rules relating to the reasonableness of a search and seizure incident to a lawful arrest, and they further agree that whether a search or seizure is reasonable within the context of a given case must depend on the facts and circumstances presented by each case. As *Rabinowitz* held:

> "What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case." 339 U.S. at 63, 70 S.Ct. at 434, 94 L.Ed. at 659.

As applied to the case at bar, the arrest of petitioner for misdemeanors committed in the presence of the Columbus officers was unquestionably lawful and furnished a valid basis for the search of petitioner's person. The officers were not required to complete the search at the very moment and place of arrest, in view of the crowd present at the scene and the other duties then required of the two arresting officers. Under such circumstances, it was reasonable for the officers to do no more than cursorily pat down the arrestee for weapons at the place of arrest and then complete the search of his person upon arrival at the stationhouse. This is quite proper when the arrestee is directly brought to the stationhouse without undue delay for the purpose of booking. It is also reasonable for police officers, upon the arrestee's arrival at the stationhouse, promptly to conduct a thorough search of the person "to remove any weapons that [arrestee] might seek to use in order to resist arrest or effect his escape," and also to "seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel,* supra, 395 U.S. at 763, 89 S.Ct. at 2040.

Admittedly, Jaynes' examination and subsequent use of the contents of the brown package was a search and seizure within the scope of the Fourth Amendment. Petitioner advances two specific contentions that the search was unreasonable: First, he asserts that the stationhouse search was, in point of fact, not incident to lawful arrest but its purpose was to rummage through his effects under the guise of inventorying and safeguarding petitioner's personal property during his period of incarceration; second, even if incident to lawful arrest, the search did not confer upon the officers the right to seize property unrelated to the crimes for which petitioner was arrested (i. e., disorderly conduct and public drunkenness) and upon mere suspicion that it might be contraband. After mature consideration, we find both contentions to be without merit and, therefore, reject them.

■ Petitioner places his main reliance upon Brett v. United States, supra, a Fifth Circuit case, where the defendant was arrested and was searched, though not thoroughly, he was taken to jail and given prison garb, and his clothing and

---

12. The search and seizure involved here took place on August 31, 1968. *Chimel* was decided on June 23, 1969. The Supreme Court reaffirmed in Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), that the new standards announced in *Chimel* were not to be given retroactive effect, and that as to pre-*Chimel* searches, the standards announced in *Harris* and *Rabinowitz* were to be applied. Since the "new law" made by *Chimel* restricts the area which may be searched incident to an arrest, but does not otherwise announce any new principle of constitutional law, it is in accord with *Harris* and *Rabinowitz* on the proposition for which it is cited here.

effects were put in a bag in the prisoners' property room for routine safekeeping. Under these circumstances search of his clothing three days later without a search warrant, which resulted in finding heroin in the watch pocket, was held to be invalid. The facts are clearly distinguishable, as the *Brett* Court pointed out that "this search was not incident to an arrest because it was not even close to contemporaneous." The undisputed facts of the case at bar bring the stationhouse search clearly within the framework of a search made contemporaneously with the lawful arrest and incident thereto. As the Fifth Circuit said in *Gonzalez-Perez:*

> "The arresting officers are not required to stand in a public place examining papers or other evidence on the person of the defendant in order for such evidence to be admissible." 426 F.2d at 1287.

The Columbus police officers had the authority to complete at the stationhouse the search begun of petitioner at the Elks Club scene, and, as noted, this search was carried out almost immediately upon petitioner's arrival at the stationhouse. The fact that officer Jaynes testified that his purpose in the shakedown was to collect the personal effects of petitioner for safekeeping did not restrict the right to search and seize weapons, or evidence of crime which might be concealed or destroyed, or contraband. We find on the facts that Jaynes' shakedown at the stationhouse was a legitimate and constituent part of the search of petitioner incidental to his lawful arrest.[13]

Petitioner's second contention that the seizure of the brown package was an item unrelated to the crimes for which he had been arrested, and thus invalid, ignores the fact that what was seized was marihuana, a contraband article, the possession of which was a crime. Contentions similar to those raised by petitioner were considered and rejected in Harris v. United States, supra, where the Supreme Court made this salient observation:

> "This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime in committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime." 331 U.S. at 154, 67 S.Ct. at 1103.

The Fifth Circuit in Collins v. United States, 289 F.2d 129, 130 (1961), expressly applied the *Harris* rule to sustain a warrantless search and seizure of an illegal firearm, stating that it was "not a significant consideration that the shotgun seized may have had no relation to the crime for which Collins was arrested."

In its latest pronouncement, the Supreme Court emphasized "there must, of course, be a nexus—*automatically provided in the case of fruits, instrumentalities or contraband*—between the item to be seized and criminal behavior." (Emphasis added). Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782, 792 (1967). The Fifth Circuit in United States v. Munroe, 421 F.2d 644, at p. 646 (1970), referred to the *Hayden* rule by stating:

> " . . . [M]ere evidence, as distinguished from fruits or instru-

---

13. This holding renders unnecessary a determination of whether Jaynes' actions may also be upheld as a bona fide inventory of petitioner's effects for safekeeping under United States v. Lipscomb, 435 F.2d 795 (5 Cir. 1970)—an issue on which we conducted evidentiary hearing.

Even though Jaynes' examination of the brown package might not be justified as a legitimate stationhouse inventory, his action still falls within the scope of a reasonable search incident to lawful arrest.

mentalities of a crime or contraband, may be seized, provided there is a nexus between the items seized and the criminal investigation being undertaken."

In the case at bar, the nexus is automatically supplied by the contraband.

■ Petitioner's claim that the cigarettes were seized on mere suspicion and at a time when Jaynes had no probable cause to suspect they were contraband, does not render the seizure invalid. A lawful arrest having been made, the law imposes no requirement of probable cause to seize contraband. "A crime was thus being committed in the very presence of the agents conducting the search. Nothing in the decisions of this Court give support to the suggestion that under such circumstances the law-enforcement officials must impotently stand aside and refrain from seizing such contraband material." *Harris*, supra, 331 U.S. at 155, 67 S.Ct. at 1103. Again in Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 697, 4 L.Ed.2d 668, 686 (1960), the Supreme Court held:

> "When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

In many cases the officers conducting a lawful search may suspect but not recognize an article to be contraband, but the validity of the seizure is not controlled by an officer's knowledge of or familiarity with the prohibited article. Petitioner's argument, therefore, that it is unreasonable to seize property unrelated to the crimes for which the arrest has been made, and without probable cause, has no validity in the instant situation.

The notion that in a search incident to lawful arrest for other crime, probable cause must still exist to seize contraband was accepted by the Supreme Court of Oregon in State v. Elkins, 245 Or. 279, 422 P.2d 250 (1966), and that case is authority for petitioner's position. The Court's rationale was based upon what we believe is an incorrect application of *Harris*, *Abel* and other controlling Supreme Court cases, a point forcibly made in the dissenting opinion of Justice Perry. We also decline to follow the district court's ruling in United States v. Jones, 317 F.Supp. 856 (E.D.Tenn.1970), a case cited by petitioner, that upon the removal of an article from the person of an arrestee in a search incident to lawful arrest, the article may not be further examined without a search warrant, since it is no longer "within the immediate control" of the arrestee, making such further examination barred by *Chimel*. That view unduly restricts the purpose of an otherwise reasonable search and seizure and is contradicted by the very wording of *Chimel* which acknowledged there was "ample justification . . . for a search of the arrestee's person *and* the area 'within his immediate control'." 395 U.S. at 763, 89 S.Ct. at 2040, 23 L. Ed.2d 685 (Emphasis added).

### B. *The Statute and Instructions*

■ Petitioner complains that he was convicted without due process of law in violation of the Fourteenth Amendment to the Constitution because § 6846, Miss.Code Ann., makes the mere possession of marihuana a crime in the absence of criminal intent,[14] and further contends that, even though certain types of activity may be made subject to criminal penalties in the absence of specific criminal intent, such criminal statutes, in order to pass the test of constitutional validity, must provide only minor penalties for violation. Since the minimum penalty for violation of § 6866 was at the time of petitioner's trial and

---

14. The provisions of § 6846 at the time of petitioner's trial and conviction were as follows:

"It shall be unlawful for any person to manufacture, possess, have under his or her control, sell, prescribe, administer, dispense, or compound any narcotic drug except as authorized in this Act."

conviction a minimum of two years and a maximum of five years imprisonment plus a fine of not more than $2,000,[15] petitioner says the statute is thereby rendered unconstitutional. Petitioner also complains that a jury instruction given at the request of the state altogether omitted the element of criminal intent.[16]

Petitioner made the same attack upon the constitutionality of the statute on his appeal to the Supreme Court of Mississippi, which affirmed in reliance upon United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922).

In support of his contention that the statute is unconstitutional, petitioner cites United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); United States v. Freed, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); Robinson v. Calif., 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); Lambert v. Calif., 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed. 2d 228 (1957); Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

In response to petitioner's attack upon the statute, respondent urges that its validity is upheld by United States v. Freed, supra; United States v. Wiesenfeld Warehouse Co., 376 U.S. 86, 84 S.Ct. 559, 11 L.Ed.2d 536 (1964); United States v. Balint, supra; and Shevlin-Carpenter Co. v. Minn., 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910).

After studying the authorities relied upon by the parties to support their respective positions, and after giving careful consideration to the opinion of the Supreme Court of Mississippi sustaining the constitutionality of the statute, Wright v. State, supra, we conclude that the cases cited by petitioner do not sustain his argument, and that the State Supreme Court correctly upheld the validity of the statute under the Fourteenth Amendment.

The obvious purpose of the statute under review is to control the traffic in drugs and protect the public against the dangers inherent in the indiscriminate use of such substances. United States v. Balint recognized the validity of statutory schemes designed to deal with this social problem, and there the Supreme Court held that in such cases criminal intent is not mandated by the Fourteenth Amendment as a necessary element of the crime, using this language:

" . . . the state may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se." 258 U.S. at 252, 42 S.Ct. at 302.

Morissette v. United States, supra, did not involve such a police regulation, but dealt with a statute providing that "whoever embezzles, steals, purloins or knowingly converts" government property is punishable by a fine and/or imprisonment.[17] No exercise of the police power as in *Balint* or as here was involved in *Morissette*. Lambert v. Calif., supra, dealt with the felon registration ordinance of the City of Los Angeles. The Supreme Court overturned the ordinance because merely being present in the City of Los Angeles was sufficient to constitute a violation if one happened to have at one time been convicted of a felony in California, or committed an act elsewhere which under the law of California would have been a felony. Regarded by the Court as a mere law enforcement technique and a compilation of information already a matter of public

---

15. See note 1, supra.

16. See note 11, supra.

17. 18 U.S.C. § 641.

record, the ordinance could not stand against the Fourteenth Amendment in the absence of some requirement of knowledge of the duty to register on the part of persons affected by the ordinance, because it imposed a criminal penalty for conduct, without criminal intent or knowledge, and not considered blameworthy if engaged in by an average member of the community. The Court nevertheless recognized that criminal intent is not always a necessary element of crime:

> "We do not go with Blackstone in saying that 'a vicious will' is necessary to constitute a crime . . ., for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition." 355 U.S. at 228, 78 S.Ct. at 242.

It was further emphasized that the conduct prohibited by the Los Angeles ordinance was wholly passive and involved no affirmative act on the part of persons coming within its operation. Here, petitioner is not charged merely with the passive condition of "being" in a certain place or with occupying a "status" as in Robinson v. Calif., supra, but is charged with the affirmative act of possessing marihuana.

United States v. Freed, supra, is a case in which the constitutionality of a federal statute prohibiting the possession of unregistered firearms of certain types was upheld even though criminal intent is not an element of the crime. The Court specifically following *Balint* and quoted extensively from that decision. United States v. International Minerals and Chemical Corp., supra, is no authority for petitioner's position because the concern was with 18 U.S.C. § 834(f) which imposes criminal sanctions upon one who "knowingly violates" certain regulations.

As to the effect upon the validity of the statute of the rather harsh penalties imposed by § 6866, Miss.Code Ann., we are not persuaded that the nature of the penalty is absolutely determinative of the constitutional validity vel non of the statute. It is true, as observed by petitioner, that in *Morissette* the Supreme Court remarked that in criminal statutes dispensing with the element of criminal intent, penalties are usually relatively small and conviction does no grave damage to the reputation of one convicted of a violation. See 342 U.S. at 256, 72 S.Ct. 240. However, we do not agree that this is "a significant part of the justification for dispensing with guilty intent as an element in strict liability public welfare offenses," as contended by petitioner. On the contrary, the Minnesota statute upheld in *Shevlin-Carpenter Co.*, supra, made the offense a felony and provided for a fine of up to $1,000 or imprisonment not exceeding two years, or both, and in United States v. Freed, supra, violation of the statutes there in question carried a maximum penalty of ten years imprisonment or $10,000 fine, or both.[18]

Petitioner, of course, has it within his power to avoid the harsh penalty of his original conviction by applying to the sentencing court for a re-sentence under the new legislation.[19]

In view of the constitutionality of the statute, no discussion of the jury instructions given by the trial court is required. The extent to which conflict may have existed therein is of no moment in this present proceeding, and this may not be complained of.

For the foregoing reasons, the court is of the opinion that the petitioner is not entitled to the relief sought and his petition for writ of habeas corpus shall be accordingly dismissed.

---

18. See 26 U.S.C. § 5871.

19. See note 1, supra.